[No. 45646. En Banc. May 31, 1979.]

NORTH SEA PRODUCTS, LTD., *Respondent*, v. CLIPPER
SEAFOODS COMPANY, ET AL, *Defendants*, LUMMI
TRIBAL COUNCIL, *Petitioner*.

*Daniel A. Raas* and *Harry L. Johnsen,* for petitioner.

*McCush, Kingsbury, O'Connor, Ludwigson, Thompson &
Hayes,* by *Craig Hayes,* for respondent.

*Richard Reich* and *Allen Sanders* on behalf of Muckle-shoot Indian Tribe, amici curiae.

This case presents the question of whether the immunity from suit traditionally possessed by federally recognized Indian tribes includes immunity from garnishment actions. Also included is the issue of whether tribal immunity against garnishment is waived when a tribe conducts a commercial enterprise outside the boundaries of the reservation.

We hold that tribal immunity includes immunity from garnishment actions, and that this immunity has not been waived by the tribe's commercial activities. In these respects, we reverse the trial court, which held to the contrary.

The procedural history of this case can be briefly summarized as follows:

On February 4, 1977, a writ of garnishment was issued by the Superior Court for Whatcom County naming the "Lummi Tribal Council and/or Lummi Processing Plant" as garnishee. The writ ordered the garnishee to withhold the wages of one of its employees. The true name of the "Lummi Tribal Council" is the Lummi Indian Business Council (LIBC), which is the governing body of the Lummi Indian Tribe. The "Lummi Processing Plant" is actually the Lummi Indian Seafood Company (LISCO), which in turn is an operating division of Lummi Indian Tribal Enterprises (LITE). LITE is an enterprise chartered by LIBC in accordance with article VI of the Lummi tribal constitution. The LITE charter contains the following relevant provision:

> The Board shall have authority to enter into contracts and to do all other things necessary to carry out its responsibilities hereunder; provided, however, that the Board shall not enter into any litigation without specific authorization of the Lummi Indian Business Council, *nor*

*may the Board waive immunity from suit without specific authorization.*

(Italics ours.)

The Lummi Indian tribe is a federally recognized Indian tribe operating under a constitution and bylaws approved by the Secretary of the Interior on April 10, 1970.

The petitioners moved the court for an order quashing the garnishment writ and for attorney fees for wrongful garnishment. The petitioners asserted that the Lummi Indian Tribe and subordinate divisions thereof are immune from the jurisdiction of the court and that consequently the court lacked both personal and subject matter jurisdiction over an action involving the tribe. The trial court denied the motion to quash. Petitioners' motions for reconsideration and attorney fees were also denied. An appeal was filed with Division One of the Court of Appeals, and this court granted discretionary review.

■ It is undisputed by the parties that Indian tribes possess a degree of immunity from suit. In *Puyallup Tribe, Inc. v. Department of Game* (*Puyallup* III), 433 U.S. 165, 172–73, 53 L. Ed. 2d 667, 97 S. Ct. 2616 (1977), the United States Supreme Court vacated the portions of a Washington superior court judgment involving relief against the Puyallup tribe itself, holding that

> [a]bsent an effective waiver or consent, it is settled that a state court may not exercise jurisdiction over a recognized Indian tribe. This Court, *United States* v. *United States Fidelity & Guaranty Co.*, [309 U.S. 506, 84 L. Ed. 894, 60 S. Ct. 653 (1940)]; the Washington Supreme Court, see, *e. g., State ex rel. Adams* v. *Superior Court*, 57 Wash. 2d 181, 182–185, 356 P. 2d 985, 987–988 (1960); and the commentators, see, *e. g.*, U. S. Dept. of Interior, Federal Indian Law 491–494 (1958), all concur.

Furthermore, the United States Supreme Court recently ruled that:

> Indian tribes have long been recognized as possessing the common–law immunity from suit traditionally enjoyed by sovereign powers. *Turner* v. *United States*, 248 U. S. 354, 358 (1919); *United States* v. *United States*

*Fidelity and Guaranty Co.,* 309 U. S. 506, 512–13 (1940); *Puyallup Tribe* v. *Washington Dept. of Game,* 433 U. S. 165, 172–173 (1977). This aspect of tribal sovereignty, like all others, is subject to the superior and plenary control of Congress. But "without congressional authorization," the "Indian Nations are exempt from suit." *United States* v. *United States Fidelity and Guaranty Co., supra,* at 512.

*Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 56 L. Ed. 2d 106, 98 S. Ct. 1670 (1978).

Respondent concedes that Indian tribes have traditionally enjoyed immunity, but argues that this immunity extends only to cases of direct suit against a tribe. Respondent argues that the present garnishment action constitutes an indirect suit against the tribe and that tribal immunity should not be extended to cases in which the tribe is sued only indirectly.

As a general rule, a garnishment proceeding is not an original proceeding. Rather, it is ancillary to and dependent upon a principal action between a creditor and debtor. *State ex rel. Pioneer Mining & Ditch Co. v. Superior Court,* 108 Wash. 183, 183 P. 74 (1919); 6 Am. Jur. 2d *Attachment and Garnishment* § 11 (1963). Nonetheless, despite the ancillary nature of the proceeding, we are satisfied that, when the state statutory proceeding of garnishment is properly invoked and considered against the backdrop of the doctrine of Indian tribal immunity, it embraces sufficient characteristics of a direct proceeding against a garnishee Indian tribe to bring it within the ambit of the pertinent immunity.

█ Garnishment actions in this state are controlled by the provisions of RCW 7.33. RCW 7.33.060 renders the state and its political subdivisions amenable to the writ. RCW 7.33.110 prescribes the form of the writ, the time for answer (20 days), and warns of the penalty for default. RCW 7.33.140 describes the effect of the writ following service upon the garnishee, including a proscription against disposing of any of the assets of the principal defendant

then in possession of the garnishee without court order. RCW 7.33.190, in part, provides:

> Should the garnishee fail to make answer to the writ within the time prescribed therein, it shall be lawful for the court, on or after the time to answer such writ has expired, *to render judgment by default against such garnishee for the full amount claimed by plaintiff against the defendant, or in case plaintiff has a judgment against defendant, for the full amount of such judgment with all accruing interest and costs*:

(Italics ours.)

RCW 7.33.210 provides for execution of a judgment against the garnishee, whether by default or otherwise, in the same manner as execution upon any judgment is ordinarily issued. And, RCW 7.33.220 and .230 provide for appropriate delivery of goods and effects of the principal defendant adjudged to be in possession of the garnishee and permits entry of a contempt order against the garnishee for failure to deliver such goods and effects.

It thus appears clear, at least from the latter cited provisions of RCW 7.33, that, upon the occurrence of one or more events, the garnishor plaintiff may proceed directly against the garnishee, *i.e.*, by entry of judgment by default, normal execution of judgment, or contempt. Given these potential forms of relief against a garnishee, we are satisfied respondent's attempted "direct–indirect suit" argument, in the context of the instant case, lacks merit.

We turn then to the issue of the applicability of Indian tribal sovereign immunity to garnishment actions directed to a recognized tribe or its agencies.

Although the question of whether Indian tribes are immune from garnishment actions is a novel one, the approach we now take is consistent with the body of case law involving the garnishment of governmental entities as sovereigns. As noted earlier, Indian tribes have been recognized as possessing the common–law immunity from suit which has been traditionally enjoyed by sovereign powers. *Santa Clara Pueblo v. Martinez, supra.* The general rule

regarding the garnishment of government sovereignties is that the United States, the states, and their political subdivisions cannot be summoned as garnishees in any action without statutory authorization, consent, or waiver. 6 Am. Jur. 2d *Attachment and Garnishment* § 78 (1963). *See also Buchanan v. Alexander,* 45 U.S. (4 How.) 20, 11 L. Ed. 857 (1846); *State ex rel. Summerfield v. Tyler,* 14 Wash. 495, 45 P. 31 (1896); *Flood v. Libby,* 38 Wash. 366, 80 P. 533 (1905). Our present approach recognizes in Indian tribes the same immunity from garnishment which other sovereign powers possess. Respondent has cited no congressional enactment relinquishing Indian tribal immunity from garnishment.

◼ Respondent asserts, however, that even if Indian tribes are immune from garnishment, this immunity was waived by the Lummi Tribe through its conduct. Respondent contends that by engaging in a course of commercial conduct off the reservation and by hiring a judgment debtor, the tribe has impliedly waived its immunity from garnishment actions. Respondent makes no claim that immunity was expressly waived by the tribe.

In *Puyallup* III, *supra,* the United States Supreme Court held that a state may not exercise jurisdiction over a tribe absent consent or waiver, and the court considered whether the tribe, *by its own actions,* had waived its immunity. However, in *Santa Clara Pueblo v. Martinez, supra* at 58, the United States Supreme Court declared that "'without congressional authorization,' the 'Indian Nations are exempt from suit'", *quoting, United States v. United States Fid. & Guar. Co.,* 309 U.S. 506, 84 L. Ed. 894, 60 S. Ct. 653 (1940). The Court further stated that

> [i]t is settled that a waiver of sovereign immunity "'cannot be implied but must be unequivocally expressed.'" *United States* v. *Testan,* 424 U. S. 392, 399 (1976), quoting, *United States* v. *King,* 395 U. S. 1, 4 (1969).

*Santa Clara Pueblo v. Martinez, supra* at 58–59. In its discussion of whether a waiver of sovereign immunity existed,

the court then discussed only whether the tribe's sovereign immunity had been waived by *Congress.*

The ruling in *Santa Clara Pueblo v. Martinez, supra,* leaves some question as to whether only Congress may waive a tribe's immunity and whether tribes are without power to waive their own immunity. However, we need not make that determination here because it is clear that neither the Lummi Tribe nor Congress has *expressly* and *unequivocally* waived the tribe's immunity. Respondent's theory of implied waiver must therefore be rejected.

■ Petitioners have requested attorney fees in this action. Petitioners have not in their brief supported this request by appropriate assignment of error, citation of authority, or argument. We therefore do not reach the issue. *DeHeer v. Seattle–Post Intelligencer,* 60 Wn.2d 122, 372 P.2d 193 (1962); *Northern State Constr. Co. v. Robbins,* 76 Wn.2d 357, 457 P.2d 187 (1969); *Ortblad v. State,* 85 Wn.2d 109, 530 P.2d 635 (1975); *State v. Wood,* 89 Wn.2d 97, 569 P.2d 1148 (1977).

The cause is remanded with instructions to quash the writ of garnishment and dismiss the action.

The foregoing opinion was prepared by Justice Orris L. Hamilton prior to his retirement and is adopted by the undersigned Justices as their opinion.

UTTER, C.J., and STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

ROSELLINI, J. (concurring)—I concur with the majority opinion that the Lummi Tribe is immune from legal action. It would not serve any useful purpose to hold otherwise because I am sure that the matter would then be taken to the federal courts and that they would sustain the immunity of the tribe. Thus, the respondent would be subject to further expense, loss of time, and litigation to no avail.

However, I believe the law should be otherwise. The present rule is unjust, unwise and unreasonable.

The respondent contends that it is not attempting to reach any of the assets of the tribe but only the funds which belong to Mr. Daniels, which are held by the tribe.

The tribe's position was described in the argument before the Superior Court, upon motion for reconsideration, where the following occurred:

THE COURT: You state very simply here that not only does LITE [Lummi Indian Tribal Enterprises] not have a sue and be sued provision in the charter, the enterprise is specifically prohibited from bringing suit or waiving immunity from suit. LITE can't do anything.

MR. JOHNSEN: That's right, without the specific consent of the Council. We certainly can sympathize with the plaintiff. The tribe does not want to be thought of as a haven for people who don't pay their debts, but the issue as far as the tribe is concerned, we went back and discussed the Court's previous ruling with our client before we came back here. It's more important to them than any individual employee's debts as to whether or not they should be subject to the jurisdiction of any court. It's not just the state court, it's any court, federal, tribal, whatever, without their consent, and they told us very strongly that they didn't think they should be, that they were entitled to that exemption by law and that we should come back and ask you again to reconsider your decision. That's why we're here.

THE COURT: You've got some pretty good legal arguments on your side, but I really think that having the opportunity to rule in the manner which I did, and the spirit of fairness doctrine, and holding themselves out commercially, that it would be a gross injustice to deny the Writ of Garnishment in this case. And I know I've presented a square issue for you to take—

MR. JOHNSEN: Afraid we'll have to take it up.

THE COURT: I'm sure you will, and I think the whole business community of the city should be aware of the fact that they don't want to be sued by their provision, and I as a taxpayer would certainly ask that any taxing body act reasonably and not let go of any funds or any public property being used by people who don't want to pay, don't want to be sued and will not be subject to suit if they don't want to. So I really think this thing should come to a head.

In the present case, the respondent obtained a judgment against the principal defendant Mike Daniels, a non–Indian. Daniels is employed by the tribe in a fish cannery operated in Bellingham on non–Indian land. Mr. Daniels earns in excess of $1,000 per month.

The United States Supreme Court said in *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 56 L. Ed. 2d 106, 98 S. Ct. 1670 (1978), the immunity of Indian tribes is that which has been traditionally enjoyed by sovereign powers. As such, it must be that its purpose is to protect the tribe in the exercise of its governmental powers and its jurisdiction over its own territory. But when the tribe steps outside that territory and engages in a commercial venture, the considerations which support the maintenance of sovereign immunity are no longer present. In *North Dakota–Montana Wheat Growers' Ass'n v. United States,* 66 F.2d 573 (8th Cir. 1933), the United States Court of Appeals recognized that courts have drawn distinctions between the action of a government in its sovereign capacity and its operations in commercial transactions generally carried on by corporations organized by the government and invested with some of the sovereign functions. It impliedly conceded that a government is not immune from suit where it organizes and operates such a business corporation. Of course, governments do not customarily carry on such businesses, and that explains the scarcity of authority upon the subject.

In my opinion, there is no sound reason why a business such as that of the garnishee defendant here should not be subject to suit. It exercises no sovereign functions but simply engages in commerce, in competition with other like businesses in the community. There is no equitable reason why it should be accorded special privileges.[1] Under the

---

[1]The 1978 Congress appropriated $60,736,099 for Washington tribal Indians. There are approximately 33,000 Indians in Washington who would receive $1,827 per person. National government spending for Indian tribes totals $1,691,517,000.

The Lummi tribal organization receives for community services $2,500,000; and in 1977 from the Environmental Protection Agency on tribal reservations,

rule of immunity, the tribe has the privilege of contracting and incurring liabilities, but it cannot be held to account if it fails to perform its undertakings. Such an anomaly hardly accords with the concept of an orderly and equally protected society.

Furthermore, the United States Supreme Court has held that when an Indian tribe engages in a commercial venture outside the reservation, it is subject to nondiscriminatory state taxes. *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 36 L. Ed. 2d 114, 93 S. Ct. 1267 (1973). There, the court said, in interpreting the Indian Reorganization Act of 1934 (48 Stat. 984), that it would be unrealistic to conclude that the Congress conceived of off–reservation tribal enterprises "'virtually as an arm of government'". *Mescalero,* at 153. It is true that, in that case, the right to tax found its basis in the State's Enabling Act. Such express provision for legal liability with respect to matters arising out of off–reservation enterprises cannot be found in our Enabling Act. Nevertheless, the equitable basis for the doctrine of *Mescalero* exists here, and it would seem to me that the Supreme Court's recognition of the obligation of an enterprise to pay taxes upon its operations should also extend to its legal liability for its defaults.

The law should be premised on justice and equal protection. I cannot find in this case that the law meets this standard.

BRACHTENBACH, J., concurs with ROSELLINI, J.

---

$1,278,000. There are other grants which the Lummi Tribe received but are not detailed. It would appear that such subsidies should compensate for any disadvantages which the tribe may suffer in the marketplace.