147 P.3d 1275 (2006)
Christopher WRIGHT, an individual, Respondent,
v.
COLVILLE TRIBAL ENTERPRISE CORPORATION, a foreign corporation; Colville Tribal Services Corporation, a foreign corporation; and Don Braman, an individual, Petitioners.
No. 77558-3.
Supreme Court of Washington, En Banc.
Argued May 16, 2006.
Decided December 7, 2006.
*1277 M. Katheryn Bradley, Michael Anthony Griffin, Jackson Lewis LLP, Seattle, WA, Bruce Edward Didesch, Didesch & Associates, Mead, WA, for Petitioners.
Breean Lawrence Beggs, Center for Justice, Spokane, WA, for Respondent.
James Rittenhouse Bellis, Attorney at Law, Nespelem, WA, for Amicus Curiae on behalf of Confederated Tribes of the Colville Reservation.
SANDERS, J.
¶ 1 The Court of Appeals, Division One concluded Colville Tribal Enterprise Corporation (CTEC), Colville Tribal Services Corporation (CTSC), and their agent Don Braman cannot claim tribal sovereign immunity from suit. We reverse, holding tribal sovereign immunity protects CTEC, CTSC, and Don Braman in his official capacity.

FACTS AND PROCEDURAL HISTORY
¶ 2 The Confederated Tribes of the Colville Reservation (the Tribe) is a sovereign American Indian tribe recognized by the United States, governed by the Colville Business Council (the Council). The Tribe owns land in Washington held in trust by the United States. The Colville Tribal Code (CTC) authorizes the formation of three kinds of tribal corporations: governmental (Chapter 7-1 CTC), nonprofit (Chapter 7-2 CTC), and business (Chapter 7-3 CTC).
¶ 3 Chapter 7-1 CTC authorizes the Council to create tribal governmental corporations by resolution. The Tribe characterizes tribal governmental corporations as "agencies and instrumentalities of the Colville Tribal Government," CTC 7-1-1 (see also 7-1-3), intended to enable "the management of the economic development of tribal resources to be separated from other governmental functions of the Tribe[]." CTC 7-1-2(e). Accordingly, it claims they enjoy "all of the privileges and immunities" of the Tribe, including the protection of tribal sovereign immunity. CTC 7-1-3.
¶ 4 The Tribe directly or indirectly owns and controls all tribal governmental corporations created by the Council under chapter 7-1 CTC. The Council must appoint all "initial, incorporating directors" of a tribal government corporation, and subsequent directors must be elected according to the corporation's charter. CTC 7-1-8. Either the Tribe or a tribal governmental corporation must own at least 60 percent of the voting stock of every tribal governmental corporation, CTC 7-1-6, and a tribal governmental corporation may not alienate any voting stock it owns in a tribal government corporation. CTC 7-1-7.
¶ 5 CTEC and its wholly-owned subsidiary CTSC are tribal governmental corporations created by the Council under chapter 7-1 CTC. CTEC is wholly-owned by the Council, as the representative of the Tribe. CTEC owns and manages 14 business enterprises on behalf of the Tribe, including CTSC.[1] *1278 CTEC distributes 80 percent of the net income of its casino enterprises and 25 percent of the net income of its noncasino enterprises directly to the Tribe, and it uses the remaining net income to cover capital costs and business development. Clerk's Papers at 312. However, the Tribe may instruct CTEC to change this distribution. Id.
¶ 6 In July 2002, CTSC hired Christopher Wright, a non-Indian, as a pipe-layer and equipment operator. Wright worked off-reservation on a project to construct a waterline for a United States Navy housing development in Oak Harbor, Washington. Wright alleges racial harassment prompted his resignation in February 2003.
¶ 7 In November 2003, Wright sued CTEC, CTSC, and his former supervisor Don Braman as their agent in Island County Superior Court, alleging race discrimination, racial harassment, hostile work environment, negligent supervision, and negligent infliction of emotional distress. The trial court dismissed for lack of subject matter jurisdiction under CR 82.5(a).
¶ 8 The Court of Appeals reversed, finding CR 82.5(a) does not apply and tribal sovereign immunity does not protect CTEC or CTSC. Wright v. Colville Tribal Enter. Corp., 127 Wash.App. 644, 111 P.3d 1244 (2005). CTEC and CTSC petitioned for review under RAP 13.4(1) and (4), raising only tribal sovereign immunity. We granted review at 156 Wash.2d 1020, 132 P.3d 736 (2006).

STANDARD OF REVIEW
¶ 9 The existence of personal jurisdiction over a party asserting tribal sovereign immunity is a question of law reviewed de novo. See Anderson & Middleton Lumber Co. v. Quinault Indian Nation, 130 Wash.2d 862, 876, 929 P.2d 379 (1996).

ANALYSIS
¶ 10 Tribal sovereign immunity protects a tribal corporation owned by a tribe and created under its own laws, absent express waiver of immunity by the tribe or Congressional abrogation.[2]See Kiowa Tribe v. Manufacturing Techs., 523 U.S. 751, 754, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998). CTEC and CTSC are tribal government corporations owned by the Tribe and created under its own law. The Tribe has not waived and Congress has not abrogated their immunity. Accordingly, tribal sovereign immunity protects CTEC and CTSC. Tribal sovereign immunity also protects Braman in his official, but not individual, capacity.
I. Tribal Sovereign Immunity Protects Tribes and Tribal Enterprises
¶ 11 Under federal law, tribal sovereign immunity comprehensively protects recognized American Indian tribes from suit absent explicit and "unequivocal" waiver or abrogation. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 59, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). As "domestic dependent nations," Indian tribes "exercise inherent sovereign authority over their members and territories," including sovereign immunity from suit "absent a clear waiver by the tribe or congressional abrogation." Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991). Tribal sovereign immunity protects tribes from suits involving both "governmental and commercial activities," whether conducted "on or off a reservation." Kiowa Tribe, 523 U.S. at 754-55, 760, 118 S.Ct. 1700. See also Md. Cas. Co. v. Citizens Nat'l Bank, 361 F.2d 517, 521 (5th Cir.1966) ("The fact that the Seminole Tribe was engaged in an enterprise private or commercial in character, rather than governmental, is not material.").
*1279 ¶ 12 The protection of tribal sovereign immunity also protects tribal agencies and instrumentalities as extensions of tribal government. See, e.g., Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth., 207 F.3d 21, 29 (1st Cir.2000); Bassett v. Mashantucket Pequot Tribe, 204 F.3d 343, 358 (2d Cir.2000); Dillon v. Yankton Sioux Tribe Hous. Auth., 144 F.3d 581, 583-84 (8th Cir.1998); Weeks Constr., Inc. v. Oglala Sioux Hous. Auth., 797 F.2d 668, 670-71 (8th Cir.1986). Cf. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (holding state agency immune from suit under Eleventh Amendment). And tribal sovereign immunity also protects certain tribal business enterprises because "an action against a tribal enterprise is, in essence, an action against the tribe itself." Local IV-302 Int'l Woodworkers Union v. Menominee Tribal Enters., 595 F.Supp. 859, 862 (E.D.Wis.1984).
¶ 13 Whether or not tribal sovereign immunity protects a particular tribal business enterprise depends on the nature of the enterprise and its relation to the tribe. See, e.g., Frazier v. Turning Stone Casino, 254 F.Supp.2d 295, 305 (N.D.N.Y.2003) (holding casino tribal entity protected by tribal sovereign immunity); World Touch Gaming, Inc. v. Massena Mgmt., LLC, 117 F.Supp.2d 271, 274-76 (N.D.N.Y.2000) (holding casino protected by tribal sovereign immunity which "extends to tribal enterprises"); Doe v. Oneida Indian Nation of N.Y., 278 A.D.2d 564, 565, 717 N.Y.S.2d 417 (2000) (holding tribal sovereign immunity protects casino); Dixon v. Picopa Constr. Co., 160 Ariz. 251, 258, 772 P.2d 1104 (1989) (holding tribal sovereign immunity protects "Indian tribes and their subordinate economic organizations"). "When a tribal corporation and government are not completely distinct, the immunity of the latter extends to the business operations of the former." Dao Lee Bernardi-Boyle, State Corporations for Indian Reservations, 26 Am. INDIAN L.REV. 41, 49 (2001).
¶ 14 Essentially, tribal sovereign immunity protects tribal governmental corporations owned and controlled by a tribe, and created under its own tribal laws. "Tribal law corporations are assumed to be a subdivision of the tribal government." Bernardi-Boyle, supra, at 57. A tribal corporation must explicitly "hold itself out as a separate and distinct entity" in order to waive immunity. White Mountain Apache Indian Tribe v. Shelley, 107 Ariz. 4, 480 P.2d 654, 656 (1971). Because the Council must create, own, and control every tribal governmental corporation governed by chapter 7-1 CTC, they enjoy the protection of tribal sovereign immunity.[3]
II. CTEC and CTSC Are Tribal Agencies and Instrumentalities Protected by Tribal Sovereign Immunity
¶ 15 Under Washington law, tribal sovereign immunity protects tribal governmental corporations and their subsidiaries. See N. Sea Prods., Ltd. v. Clipper Seafoods Co., 92 Wash.2d 236, 240, 595 P.2d 938 (1979). In North Sea Products, we held a tribal governmental corporation and its subsidiary, both conducting a commercial enterprise outside the reservation, were "subordinate divisions" of the tribe protected by tribal sovereign immunity. Id. at 237-38, 595 P.2d 938. See also White Mountain Apache Indian Tribe, 480 P.2d at 656 (holding tribal governmental corporation engaged in commercial activity is "subordinate economic organization" protected by tribal sovereign immunity). As tribal governmental corporations conducting commercial enterprises outside the reservation, CTEC and CTSC are functionally identical to the tribal corporations at issue in North Sea Products. Accordingly, tribal sovereign immunity must protect CTEC and CTSC.
*1280 ¶ 16 In sum, tribal sovereign immunity protects a tribal governmental corporation unless the tribe waives or Congress abrogates immunity. A tribe may waive the immunity of a tribal governmental corporation by charter. See Bernardi-Boyle, supra, at 50 (suggesting inclusion of "sue and be sued" clause in charter waives tribal sovereign immunity). But see William v. Vetter, Doing Business With Indians and the Three "S" es: Secretarial Approval, Sovereign Immunity, and Subject Matter Jurisdiction, 36 Ariz. L.Rev. 169, 173 (1994) (questioning effectiveness of such provisions). And a tribal governmental corporation authorized to waive immunity may do so by contract. See, e.g., Altheimer & Gray v. Sioux Mfg. Corp., 983 F.2d 803, 812 (7th Cir.1993) (finding no immunity because charter of tribal corporation validly provided "sovereign immunity `is hereby expressly waived with respect to any written contract entered into by the Corporation'" (quoting tribal entity's charter)); Weeks, 797 F.2d at 671. Alternatively, a tribe may waive the immunity of a tribal enterprise by incorporating the enterprise under state law, rather than tribal law. See Vetter, supra, at 173. For example, tribal sovereign immunity did not protect "a nonprofit Alaska corporation consisting of fifty-six Alaska Native villages in the Bethel area." Runyon v. Ass'n of Vill. Council Presidents, 84 P.3d 437, 438 (Alaska 2004). In other words, the Alaska tribes waived immunity by incorporating the tribal enterprise in question under Alaska law, rather than their own tribal law.
¶ 17 However, the immunity of CTEC and CTSC is neither waived nor abrogated. "It is well settled that waiver of [tribal] sovereign immunity will not be implied, but must be unequivocally expressed." Anderson & Middleton Lumber Co., 130 Wash.2d at 876, 929 P.2d 379. Chapter 7-1 CTC neither waives the immunity of tribal government corporations nor permits tribal government corporations to waive their own immunity. And the Tribe explicitly asserts the immunity of CTEC and CTSC. Furthermore, Congress has not abrogated tribal sovereign immunity to suit for employment discrimination. See, e.g., Tenney v. Iowa Tribe of Kan. & Neb. Gaming Comm'n, 243 F.Supp.2d 1196, 1198 (D.Kan.2003) (holding 42 U.S.C. § 2000e(b) explicitly exempts Indian tribes from liability for employment discrimination). Accordingly, tribal sovereign immunity protects CTEC and CTSC.
III. Tribal Sovereign Immunity Protects Employees of Tribal Governmental Corporations Acting in Official Capacity
¶ 18 Tribal sovereign immunity also protects Braman because Wright names him solely in his official capacity. See Hardin v. White Mountain Apache Tribe, 779 F.2d 476, 479 (9th Cir.1985) (holding tribal sovereign immunity "extends to individual tribal officials acting in their representative capacity and within the scope of their authority"). See also Tenneco Oil Co. v. Sac & Fox Tribe of Indians, 725 F.2d 572, 574 (10th Cir.1984); Romanella v. Hayward, 933 F.Supp. 163, 167 (D.Conn.1996). Of course, tribal sovereign immunity would not protect Braman from an action against him in his individual capacity. See Mashantucket Pequot Tribe, 204 F.3d at 360; White Mountain Apache Indian Tribe, 480 P.2d at 658 (holding tribal sovereign immunity protects officers from suit in official but not individual capacity).

CONCLUSION
¶ 19 Tribal sovereign immunity protects CTEC and CTSC, as well as Braman, acting in his official capacity. We reverse the Court of Appeals.
WE CONCUR: GERRY L. ALEXANDER, C.J., SUSAN OWENS and BOBBE J. BRIDGE, JJ.
MADSEN, J. (concurring).
¶ 1 I agree with the majority that petitioners are immune from suit under the doctrine of tribal sovereign immunity. I write separately, though, because I do not agree that this result is mandated by either Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 754, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998), or North Sea Products, Ltd. v. Clipper Seafoods Co., 92 Wash.2d 236, 595 P.2d 938 (1979). While *1281 Kiowa Tribe clarifies that tribal sovereign immunity extends to a tribe's off-reservation and commercial activities, it does not resolve whether tribal immunity extends to a tribal corporation. And contrary to the majority's assertion, this court has never directly addressed this complex issue.[1] I would take this opportunity to articulate a standard for determining whether a tribal corporation enjoys tribal immunity from suit. As noted by the dissent, there are several factors that other courts considering this question have found useful. I would adopt the reasoning of these courts and hold that the tribe's immunity extends to the petitioners in this case.

DISCUSSION

Standard of Review
¶ 2 The majority begins its analysis by setting forth the standard of review for personal jurisdiction. Majority at 4. The dissent correctly notes that the trial court dismissed the complaint under CR 12(b)(1) for lack of subject matter jurisdiction, inferring that remand for further proceedings is necessary because the trial court did not rule on the sovereign immunity issue. Thus, both the majority and the dissent fail to recognize that tribal sovereign immunity is an issue of subject matter jurisdiction, requiring dismissal under CR 12(b)(1). See FDIC v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1996) ("[s]overeign immunity is jurisdictional in nature"); Lewis v. Norton, 424 F.3d 959, 961 (9th Cir.2005) (courts lack subject matter jurisdiction to determine claims barred by tribal sovereign immunity); E.F.W. v. St. Stephen's Indian High Sch., 264 F.3d 1297, 1302-03 (10th Cir.2001) ("Tribal sovereign immunity is a matter of subject matter jurisdiction, which may be challenged by a motion to dismiss under Fed.R.Civ.P. 12(b)(1)" (citation omitted)); Pan Am. Co. v. Sycuan Band of Mission Indians, 884 F.2d 416, 418 (9th Cir.1989) (affirming Fed.R.Civ.P. 12(b)(1) dismissal based on tribal sovereign immunity). The fact that the trial court granted Colville Tribal Services Corporation's (CTSC) CR 12(b)(1) motion on the basis of CR 82.5(a) (trial court lacks subject matter jurisdiction over claims falling within the exclusive jurisdiction of a tribe), rather than on sovereign immunity grounds, is of no consequence. We may affirm the trial court's CR 12(b)(1) ruling on any appropriate grounds supported by the record, including those not articulated by the trial court. State v. Norlin, 134 Wash.2d 570, 582, 951 P.2d 1131 (1998).
¶ 3 Had the majority set forth the appropriate standard of review for a CR 12(b)(1) dismissal for lack of subject matter jurisdiction, it would have become apparent why it is unnecessary to remand this case for fact-finding on whether CTSC is a tribal entity that enjoys the tribe's immunity. The dissent incorrectly treats the ruling as a CR 12(b)(6) dismissal for failure to state a claim, which may be sustained only if it appears beyond doubt "that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Dissent at 1287. The dissent incorrectly states that we must presume the truth of Wright's allegation that Colville Tribal Enterprise Corporation (CTEC)/CTSC are not tribal entities and reverse and remand for further proceedings. Dissent at 1288.
¶ 4 Dismissal under CR 12(b)(1) and CR 12(b)(6) are analytically distinct, implicating different principles, burdens of proof, and legal consequences. The former involves whether the court has the power to adjudicate the claim, while the latter is a disposition on the merits. State v. Lane, 112 Wash.2d 464, 468, 771 P.2d 1150 (1989). Unlike a CR 12(b)(6) dismissal, a CR 12(b)(1) dismissal has no preclusive effect, is immediately appealable, and may be based on evidence outside of the pleadings. 2 James Wm. Moore, Moore's Federal Practice *1282 ¶ 12.30[2],[3], at 12-36.1, 12-37, 12-42 (3d ed.2006).[2] The procedural safeguards that attach to a CR 12(b)(6) motion are of limited application to a CR 12(b)(1) motion.
¶ 5 A challenge to subject matter jurisdiction under CR 12(b)(1) may be either facial or factual. 2 Moore, supra, ¶ 12.30[4], at 12-39. In a facial challenge, the party challenging jurisdiction asserts that the plaintiff's allegations on their face are insufficient to establish the court's jurisdiction. A plaintiff confronting a facial challenge enjoys many of the procedural protections afforded under CR 12(b)(6). Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir.1990). Thus, a trial court must assume the factual allegations in the complaint are true, construing them liberally in favor of the plaintiff, and will not look beyond the face of the complaint to determine jurisdiction. 2 Moore, supra, ¶ 12.30[4], at 12-40.
¶ 6 In a factual challenge such as the one made here, the moving party disputes the truth of allegations by submitting declarations or other evidence for the court's consideration. Exch. Nat'l Bank v. Touche Ross & Co., 544 F.2d 1126, 1131 (2d Cir.1976); 2 Moore, supra, ¶ 12.30[4], at 12-39 through 40. Under CR 12(b), a motion that includes evidentiary materials outside the pleadings converts to a summary judgment motion only when dismissal is sought under CR 12(b)(6). However, a factual challenge brought under CR 12(b)(1) is functionally similar to a summary judgment motion. Thus, when faced with a factual challenge to subject matter jurisdiction, the nonmoving party may not rest on the mere assertion that factual issues exist. Exch. Nat'l Bank, 544 F.2d at 1131. "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Savage v. Glendale Union High Sch. Dist. No. 205, 343 F.3d 1036, 1039 n. 2 (9th Cir.2003). A trial court need not accept the plaintiff's allegations as true. Safe Air v. Meyer, 373 F.3d 1035, 1039 (9th Cir.2004). Rather, the plaintiff must come forth with competent proof of jurisdictional facts. Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir.1986) (in ruling on Fed.R.Civ.P. 12(b)(1) motion, trial court may not rely on conclusory assertions and hearsay statements). Courts generally permit the nonmoving party to discover facts relevant to the jurisdictional issue, particularly when those facts are peculiarly within the control of the moving party. Williamson v. Tucker, 645 F.2d 404, 414 (5th Cir.1981).
¶ 7 Unlike with a summary judgment motion, a trial court has discretion to evaluate for itself the merits of jurisdictional claims and may order an evidentiary hearing for that purpose.[3] 2 Moore, supra, ¶ 12.30[3], at 12-37. In such cases, a reviewing court defers to the trial court's factual determinations and reviews its legal conclusions de novo.
¶ 8 Here, CTSC submitted declarations and other evidence to demonstrate that it was a tribal entity, sharing the tribe's immunity. In reply, Wright submitted competing declarations and exhibits. On review, this court may consider the evidence presented in support of, and opposition to, the CR 12(b)(1) motion, viewing the evidence in the light *1283 most favorable to the nonmoving party. See Williamson, 645 F.2d at 413 (when trial court does not resolve disputed facts in granting a dismissal based on lack of subject matter jurisdiction, appellate review is limited to determining whether ruling is correct based on the undisputed facts).
¶ 9 The dissent would remand this matter for fact-finding on whether CTSC enjoys the tribe's sovereign immunity. I agree that in some cases fact-finding may be necessary to determine whether sovereign immunity applies. See, e.g., Parker Drilling Co. v. Metlakatla Indian Cmty, 451 F.Supp. 1127, 1132-35 (D.Alaska 1978) (questions of fact precluded summary judgment over whether a tribe owned an airport and aviation company in its governmental capacity or in its corporate capacity); Nasuti v. Scannell, 906 F.2d 802, 808 (1st Cir.1990) (trial court may hold evidentiary hearing to resolve immunity-related factual disputes). However, this is not such a case. At trial and before the Court of Appeals, Wright did not dispute the relevant facts relating to CTSC's tribal affiliation and organization structure.[4] He argues for the first time before this court that fact-finding is needed to resolve the jurisdictional issue. Because the record contains undisputed facts that are dispositive of the sovereign immunity issue, remand for fact-finding is unnecessary.

Tribal Sovereign Immunity
¶ 10 As a matter of federal law, Indian tribes, as sovereigns, are immune from lawsuits. Kiowa Tribe, 523 U.S. at 754. This immunity may be lifted only by an act of Congress or by express tribal waiver. Id.; North Sea Prods., 92 Wash.2d at 241, 595 P.2d 938. And the immunity extends not just to tribal government functions, but to tribal commercial enterprises, regardless of where they occur. Kiowa Tribe, 523 U.S. at 754-55.[5]
¶ 11 While neither the United States Supreme Court nor this court has formulated a test for determining whether tribal immunity extends to tribe-created business corporations, other jurisdictions have addressed this issue. In Ransom v. St. Regis Mohawk Educ. & Cmty. Fund, Inc., 86 N.Y.2d 553, 658 N.E.2d 989, 992, 635 N.Y.S.2d 116 (1995), the New York Court of Appeals summarized the relevant case law as follows:
Although no set formula is dispositive, in determining whether a particular tribal organization *1284 is an "arm" of the tribe entitled to share the tribe's immunity from suit, courts generally consider such factors as whether: the entity is organized under the tribe's laws or constitution rather than Federal law; the organization's purposes are similar to or serve those of the tribal government; the organization's governing body is comprised mainly of tribal officials; the tribe has legal title or ownership of property used by the organization; tribal officials exercise control over the administration or accounting activities of the organization; and the tribe's governing body has power to dismiss members of the organization's governing body.
¶ 12 The court noted, however, that the most important considerations are "whether the corporate entity generates its own revenue, whether a suit against the corporation will impact the tribe's fiscal resources, and whether the subentity has the `power to bind or obligate the funds of the [tribe].'" Id. (alteration in original) (quoting Altheimer & Gray v. Sioux Mfg. Corp., 983 F.2d 803, 809 (7th Cir.1993)). The court stated that "[t]he vulnerability of the tribe's coffers in defending a suit against the subentity indicates that the real party in interest is the tribe." Id.
¶ 13 The majority incorrectly assumes that Kiowa Tribe renders irrelevant the purpose for which a tribal entity was created as a basis for determining the applicability of sovereign immunity. Kiowa Tribe declined to distinguish between a tribe's governmental and commercial activities in defining the scope of tribal immunity. Kiowa Tribe, 523 U.S. at 753-54 (citing Okla. Tax Comm'n v. Citizen Band of Potawatomi Tribe of Okla., 498 U.S. 505, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991) (noting Congress's repeated approval of the immunity doctrine as a means for tribes to advance their economic interests)). However, Kiowa Tribe does not prohibit inquiry into a tribal entity's purpose as a means of determining whether the tribal entity acts as an arm of the tribe so that its activities are those of the tribe. In Trudgeon v. Fantasy Springs Casino, 71 Cal. App.4th 632, 639, 84 Cal.Rptr.2d 65 (1999), a California court noted that the purpose of creating the tribal entity is important because "it is possible to imagine situations in which a tribal entity may engage in activities which are so far removed from tribal interests that it no longer can legitimately be seen as an extension of the tribe itself." Id. (holding that a casino is cloaked with tribe's sovereign immunity).
¶ 14 In this case, the Court of Appeals was influenced by the fact that CTEC and CTSC may not bind the tribe to any of its obligations or debts without the tribal business council's express authorization. However, because the immunity the tribe enjoys would prevent it from being held legally responsible for any of the corporations' obligations in any event, this is not the end of the inquiry. Any liability imposed on the corporations could still affect the tribe's finances. As the majority related in its statement of the case, 25 percent of CTSC's net income is distributed to the tribe. Anything, therefore, that reduces CTSC's net income reduces the tribe's income as well. And, while the corporations may have insurance, insurance is not unlimited, nor will it cover all circumstances, such as intentional misconduct. Immunity of CTSC directly protects the sovereign tribe's treasury and thus serves one of the primary purposes of sovereign immunity. See Allen v. Gold Country Casino, 464 F.3d 1044, 1047, (9th Cir.2006) (citing Alden v. Maine, 527 U.S. 706, 750, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (sovereign immunity essential to protect State treasuries from the potentially devastating effect of private suits for money damages)).
¶ 15 Moreover, CTEC specifically is "wholly-owned by the Tribes," and its shareholders are the members of the Colville Business Council, "acting on behalf of the membership of the Confederated Tribes of the Colville Reservation." Clerk's Papers at 392. The shareholders appoint the board of directors. CTEC, in turn, wholly owns CTSC. Id. at 411. The CTEC board elects the CTSC board, at least two members of which must be members of the tribe. Id. at 412. Furthermore, under the Colville tribal code, the specific purpose of corporations established by the council is to provide for the economic welfare of the tribe and its members. Id. at 350. Such corporations are expressly "considered *1285 to be governmental agencies and instrumentalities of the Tribes," with their officers and employees "considered officers and employees of the Tribes, . . . carrying out responsibilities imposed upon the Council for economic advancement of the Tribes and their members." Id. To this end, the tribal code states that tribal corporations "shall . . . be entitled to all of the privileges and immunities enjoyed by the Tribes; including but not limited to, immunities from suit in federal and state courts." Id. While the tribe found it "necessary for the management of the economic development of tribal resources to be separated from other governmental functions of the Tribes and placed within the responsibility of persons or entities different from the Council," id. at 350, it nonetheless clearly established its corporations "for [the] economic advancement of the Tribes," id. at 349, with corporate revenues to "be used to fund governmental programs for the protection and security of tribal members and residents of the reservation." Id. at 350. Directors and officers of tribal corporations "owe a standard duty of loyalty to both the corporation by which they are employed and to the Confederated Tribes of the Colville Reservation and its members." Id. at 354.
¶ 16 The corporations' articles are similar. Both state that, while management of the corporations is separate from the council's daily governmental oversight, the corporations "shall be considered at all times to be a part of the Tribes and to be carrying out essential tribal governmental functions and responsibilities as set out in the Constitution of the Tribes." Id. at 390, 409. The assets acquired by the corporations "shall be owned by the corporation for the benefit of the Tribes." Id. at 402, 425. And both corporations generally are to "act on the Tribes' behalf with respect to income-producing enterprises owned by the Tribes," and to "generate surplus revenue for the benefit of the Tribes and to provide necessary and essential governmental services within the Colville Reservation." Id. at 391-92, 410.
¶ 17 Relying on similar factors, courts in other cases have found tribal business corporations cloaked with sovereign immunity. As noted above, in Trudgeon the court found important language in the tribe's resolution stating that establishment of the casino was necessary to the tribe's quest for self-determination. The court noted that "[c]ases which have not extended immunity to tribal enterprises typically have involved enterprises formed `solely for business purposes and without any declared objective of promoting the [tribe's] general tribal or economic development.'" Trudgeon, 71 Cal.App.4th at 640, 84 Cal.Rptr.2d 65 (second alteration in original) (quoting Dixon v. Picopa Constr. Co., 160 Ariz. 251, 257, 772 P.2d 1104 (1989)). And in Gavle v. Little Six, Inc., 555 N.W.2d 284 (Minn.1996), the Minnesota Supreme Court noted language in the corporation's charter stating that the corporation was formed for the purpose of improving the business, financial, and general welfare of the tribe. Id. at 294. While those cases had the additional factor of federal Indian gaming statutes recognizing gaming as a means of promoting Indian economic self-sufficiency, see, e.g., Trudgeon, 71 Cal.App.4th at 642, 84 Cal.Rptr.2d 65, that factor is not necessarily decisive. For any business enterprise established with the express purpose of promoting tribal economic development, the extension of immunity arguably furthers "federal policies intended to promote Indian tribal autonomy." Gavle, 555 N.W.2d at 294.
¶ 18 Similar to the cases mentioned above, I would hold that the petitioners here are entitled to the protection of sovereign immunity. In light of the purposes for which the tribe founded CTSC, and the tribe's ownership and control of its operations, there can be little doubt that it functions as an arm of the tribe. Thus, CTSC enjoys the tribe's immunity from suit.
¶ 19 The dissent suggests that a broad application of sovereign immunity to tribal corporations would be harmful to tribes because it will deter others from entering into business relationships with tribes. Dissent at 1287 n. 4. In response, the majority states that a bright line rule extending sovereign immunity to all tribal corporations will aid tribes by dispelling the uncertainty about whether sovereign immunity applies to a particular tribal entity. Majority at 1279 n. 3. It is not within the province of this court to decide whether sovereign immunity will help *1286 or hurt tribes. That is a decision for Congress and the tribes. The doctrine of tribal sovereign immunity is a matter of federal law over which Congress has plenary authority. Kiowa Tribe, 523 U.S. at 759. As the Supreme Court made clear in Kiowa Tribe, Congress has repeatedly indicated its continued support for the doctrine, and a court should be particularly cautious of substituting its policy judgment for that of Congress in this area. Id. ("Congress is in a position to weigh and accommodate the competing policy concerns and reliance interests. The capacity of the Legislative Branch to address the issue by comprehensive legislation counsels some caution by us in this area. Congress . . . `has always been at liberty to dispense with such tribal immunity or to limit it.'").[6]
¶ 20 Finally, it is worth pointing out that the majority's result does not leave individuals such as Mr. Wright without a remedy. Under the CTEC policy manual, Wright could have filed a grievance or sought relief through the Tribal Employment Rights Office. Or, if unsatisfied, the Colville Tribal Civil Rights Act, Colville Tribal Law and Order/Code § 1-5-1, allows for recovery of damages under a policy of insurance.
I CONCUR: Justice MARY E. FAIRHURST.
C. JOHNSON, J. (dissenting).
¶ 21 The majority commits several errors in deciding this case which leads to an erroneous conclusion. The trial court decision dismissed the complaint pursuant to a CR 12(b)(1) motion, concluding it lacked subject matter jurisdiction.[1] The Court of Appeals reversed that decision, and petitioners did not challenge that issue here.[2] To the extent this case presents an issue involving tribal immunity, the factual record is insufficient for an appellate court to make this determination. This case should be remanded to the trial court for further proceedings.
¶ 22 The record before the trial court, the Court of Appeals, and this court is comprised of Christopher Wright's complaint and the memoranda, competing declarations, and exhibits the parties submitted in support of and in opposition to petitioners' CR 12(b) motion. The trial court made no findings of fact and only briefly mentioned the issue of sovereign immunity. Verbatim Report of Proceedings at 27 (Feb. 23, 2004) ("Then there's a very compelling argument, I believe, as well that  for sovereign immunity here.").
¶ 23 When reviewing a trial court's dismissal pursuant to CR 12(b)(1),[3] we are not factfinders. When factual discrepancies exist, we must resolve them in the plaintiff's favor because no dismissal for failure to state a claim under CR 12(b)(6) should be granted *1287 unless it appears, beyond doubt, that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See Berge v. Gorton, 88 Wash.2d 756, 759, 567 P.2d 187 (1977). In this case, we have no factual findings, only the contested, unproven, competing declarations and their accompanying documents. The parties disagree on the factual significance of these documents and their application to the corporations and the Tribe.
¶ 24 The contradictory nature of the parties' factual representations is evident by comparing the documents discussed by Wright and the Court of Appeals to the documents highlighted by the petitioners. The Court of Appeals relied on portions of the corporations' articles of incorporation, which prohibit the corporations from entering into any agreements on the Tribe's behalf, pledging the Tribe's credit, disposing of or encumbering personal property of the Tribe, securing any loans or incurring any indebtedness binding the Tribe, or otherwise binding or obligating the Tribe. Wright v. Colville Tribal Enter. Corp., 127 Wash.App. 644, 655-56, 111 P.3d 1244 (2005). Wright notes that the corporations filed with the Washington Secretary of State as foreign, for-profit, regular corporations doing business in Washington. He also points out that the corporations' organizing documents identify as goals the maximizing of shareholder wealth and separation from tribal government.
¶ 25 The petitioners contradict Wright's assertions and rely on provisions of the Colville Tribal Code, which state that the corporations are established to provide for the economic welfare of the Tribe and its members. The petitioners point out that the Colville Tribal Code defines the corporations as "agencies and instrumentalities of the Colville Tribal Government," gives the corporations the constitutional authority of the Tribe to "develop the economic resources of the Tribe," and states that the corporations "have the same privileges and immunities as the Tribe." Clerk's Papers (CP) at 349-50. The petitioners highlight the Tribe's significant financial dependence on the corporations. Additionally, provisions of the corporations' articles of incorporation state that the corporations are charged with carrying out essential tribal government functions and responsibilities, that the assets acquired by the corporations are owned by the corporations for the benefit of the Tribe, and that the corporations act on behalf of the Tribe with respect to income-producing enterprises owned by the Tribe. CP at 391-92, 410.
¶ 26 Even if we decided the record was sufficient to review this question, we should remember that the concept of tribal sovereign immunity is not a novel one. Neither party challenges the rule that sovereign immunity protects the governmental and commercial activities of tribes, absent an express waiver of immunity by the tribe or Congressional abrogation. Kiowa Tribe v. Mfg. Techs., 523 U.S. 751, 754, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998). The parties disagree in their briefing on the factual question of whether the petitioner corporations are tribal entities and thereby protected by sovereign immunity as commercial activities of the tribe.
¶ 27 Courts have adopted various factors in deciding whether corporations are tribal entities and are entitled to immunity.[4] The Minnesota Supreme Court has condensed the inquiry into the following three core factors: (1) whether the business entity is organized for a purpose that is governmental in nature, rather than commercial; (2) whether the tribe and the business entity are closely linked in governing structure and other characteristics; and (3) whether federal policies intended to promote Indian tribal autonomy are furthered by the extension of immunity to the business entity. Gavle v. Little Six, 555 N.W.2d 284, 294 (Minn.1996).
*1288 ¶ 28 The corporations in this case recognize 11 factors as relevant: (1) whether the entity is organized under the tribe's laws or constitution, (2) whether the entity's purposes are similar to or serve those of the tribal government, (3) whether the entity's governing body is composed mainly of tribal officials, (4) whether the tribe has legal title to or owns property used by the entity, (5) whether tribal officials exercise control over the administration or accounting activities of the organization, (6) whether the tribe's governing body has the power to dismiss members of the organization's governing body, (7) whether the entity generates its own revenue, (8) whether a suit against the entity will affect the tribe's finances and bind or obligate tribal funds, (9) the announced purpose of the business entity, (10) whether the entity manages or exploits tribal resources, and (11) whether protection of Indian assets and tribal autonomy will be furthered by extending immunity to the entity. Pet. for Review at 15 (citing Runyon v. Ass'n of Vill. Council Presidents, 84 P.3d 437, 440-41 (Alaska 2004); Ransom v. St. Regis Mohawk Educ. & Cmty. Fund, Inc., 86 N.Y.2d 553, 658 N.E.2d 989, 993, 635 N.Y.S.2d 116, (1995); Gavle, 555 N.W.2d at 294; and Dixon v. Picopa Constr. Co., 160 Ariz. 251, 772 P.2d 1104, 1110 (1989)).
¶ 29 Without any established factual record, however, it is difficult to ascertain which factors even apply to this case. Wright asserts that the corporations are separate from the Tribe and therefore not tribal entities, which must be presumed true under our standard of review. We should remand to the trial court for a factual determination of whether the corporations constitute tribal entities and are thereby protected by sovereign immunity.[5]
WE CONCUR: TOM CHAMBERS and JAMES M. JOHNSON, Justices.
NOTES
[1] Mill Bay Casino, Okanogan Bingo Casino, Coulee Dam Casino, Colville Indian Precision Pine, Colville Indian Power and Veneer, Colville Timber Resource Company, Colville Tribal Logging, CTSC, Roosevelt Recreational Enterprises, Rainbow Beach Resort, Trading Post, Inchelium Community Store, Keller Community Store, and Colville Tribal Credit. Clerk's Papers at 312.
[2] The dissent argues summary judgment is inappropriate because the parties dispute material questions of fact. But it fails to identify any disputed facts. While the parties dispute the "significance" of the facts, dissent at 1287, they do not dispute the facts themselves. Indeed, the parties dispute whether CTEC and CTSC are tribal entities protected by tribal sovereign immunity. But in the absence of an actual factual dispute, this is a question of law. The dissent simply advances an 11-factor test we reject as incompatible with Kiowa and without foundation in Washington law.
[3] The dissent correctly suggests tribal sovereign immunity may deter non-Indians from entering business transactions with tribal corporations. Dissent at 1287 n. 4. Unfortunately, the 11-factor test it proposes makes it impossible for non-Indians contemplating a business transaction with a tribal corporation  or tribes themselves  to know whether tribal sovereign immunity protects a particular tribal corporation without a judicial determination. Uncertainty is the enemy of contract. Accordingly, we adopt a bright-line rule enabling tribes to clearly demarcate which tribal corporations are protected by tribal sovereign immunity and which are not.
[1] In North Sea Products, we held that tribal immunity precluded the issuance of a writ of garnishment against the Lummi Indian Seafood Company, an operating division of an enterprise chartered by the Lummi Indian Business Council. However, we did not expressly address the issue of immunity of tribal corporations. Rather, the court (and the parties) assumed the tribe's immunity extended to the seafood company: at issue was whether tribal immunity includes immunity from garnishment actions and whether the tribe waived its immunity. Id. at 239-42, 595 P.2d 938.
[2] Our version of CR 12(b) mirrors its federal counterpart. Accordingly, we may look to federal authorities for guidance in interpreting CR 12(b). See Bryant v. Joseph Tree, Inc., 119 Wash.2d 210, 829 P.2d 1099 (1992) (construing CR 11 in light of Fed.R.Civ.P. 11); Am. Discount Corp. v. Saratoga West, Inc., 81 Wash.2d 34, 37, 499 P.2d 869 (1972) (construing CR 24 in light of Fed.R.Civ.P. 24); McGugart v. Brumback, 77 Wash.2d 441, 444, 463 P.2d 140 (1969) (construing CR 26 in light of federal discovery rules as interpreted in other jurisdictions).
[3] An exception exists when the merits of the jurisdictional issue are inextricably tied to the merits of the claim itself, in which case a court generally should either apply a summary judgment standard or permit the plaintiff to develop the relevant jurisdictional facts at trial. Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362-65 (1st Cir.2001) (court may defer resolution of jurisdictional issue until trial where merits of claim inextricably linked to jurisdictional facts); Cupit v. United States, 964 F.Supp. 1104, 1107 (W.D.La.1997) (court must apply summary judgment standard to factual findings on jurisdictional issue when intertwined with merits); 2 Moore, supra, ¶ 12.30[3], at 12-38.
[4] In his motion opposing dismissal, Wright argued sovereign immunity did not apply because CTSC conducted its activities off-reservation, engaged in commercial rather than governmental activities, registered as a foreign corporation under the laws of Washington, and "appeared to be a regular construction company." Clerk's Papers at 268-69. As correctly noted by the majority, none of these facts has any bearing on the issue of CTSC's sovereign immunity. Wright also disputed the legal significance of two provisions of the CTSC's/CTEC's incorporation documents: one declaring the intent to separate the tribe's commercial and governmental activities and the other providing a conditional power to "sue and be sued." Contrary to the dissent, the import of these provisions may be determined as a matter of law. A "sue and be sued" provision that authorizes a tribal entity to consent to suit does not constitute a waiver of immunity absent evidence that a tribal official has invoked that power. Ransom v. St. Regis Mohawk Educ. & Cmty. Fund, Inc., 86 N.Y.2d 553, 658 N.E.2d 989, 995, 635 N.Y.S.2d 116 (1995). See also Hagen v. Sisseton-Wahpeton Cmty. Coll., 205 F.3d 1040, 1044 (8th Cir.2000) (authorization in tribal college's charter to "waive any immunity from suit" did not itself effect a waiver); Chance v. Coquille Indian Tribe, 327 Or. 318, 963 P.2d 638 (1998) (authorization in tribal ordinance for tribal officials to consent to suit is not itself a waiver of immunity); Dillon v. Yankton Sioux Tribe Hous. Auth., 144 F.3d 581, 583 (8th Cir. 1998) (sue and be sued clause that merely authorizes an entity to waive sovereign immunity is not self-executing); Robles v. Shoshone-Bannock Tribes, 125 Idaho 852, 876 P.2d 134, 136 (1994) (sue and be sued clause does not mean suit against tribal corporation may proceed in state rather than tribal court). Here, Wright points to nothing other than the language of the "sue and be sued" provision itself as evidence of waiver.
[5] Unlike this case, in Kiowa Tribe the tribe itself was sued in state court to enforce a promissory note executed in the tribe's name. The majority misconstrues Kiowa Tribe as holding that all tribal corporations enjoy sovereign immunity. The United States Supreme Court has not yet set forth a standard for determining when tribal immunity extends to tribal corporations, a fact recognized by other courts faced with post-Kiowa Tribe assertions of tribal immunity. Johnson v. Harrah's Kan. Casino Corp., No. 04-4142-JAR, 2006 WL 463138, at *1 n. 6, 2006 U.S. Dist. LEXIS 7299, at * 18 n. 6 (D.Kan.2006); Trudgeon v. Fantasy Springs Casino, 71 Cal.App.4th 632, 636, 84 Cal.Rptr.2d 65 (1999).
[6] In response to Kiowa Tribe, then-United States Senator Slade Gorton proposed two bills that would have waived tribal immunity for most types of lawsuits. To provide for the enforcement of certain contracts made by Indian tribes, S. 2299, 105th Cong. § 2299 (1998) (conferring district court jurisdiction and waiving sovereign immunity for contract claims against tribes after noting that "the assertion of tribal immunity serves as a deterrent to economic development"); To provide for tort liability insurance for Indian tribes, and for other purposes, S. 2302, 105th Cong. § 2302 (1998) (requiring tribes to maintain tort liability insurance and waiving sovereign immunity for claims by tort victims in order to protect "`those who are unaware that they are dealing with a tribe, who do not know of tribal immunity, or who have no choice in the matter'" (quoting Kiowa Tribe, 523 U.S. at 758, 118 S.Ct. 1700)). The bills did not pass.
[1] The majority notes that the trial court decision was based on CR 82.5. That rule provides: "Where an action is brought in the superior court of any county of this state, and where, under the Laws of the United States, exclusive jurisdiction over the matter in controversy has been granted or reserved to an Indian tribal court of a federally recognized Indian tribe, the superior court shall, upon motion of a party or upon its own motion, dismiss such action pursuant to CR 12(b)(1), unless transfer is required under federal law." CR 82.5(a). Nothing in the record establishes that the claims in this case fall under the exclusive jurisdiction of the Tribe.
[2] In the petition for review, petitioners state "[r]eview is sought only as to tribal sovereign immunity, not as to the holding regarding subject matter jurisdiction under Montana v. United States, 450 U.S. 544 [, 101 S.Ct. 1245, 67 L.Ed.2d 493] (1981)." Pet. for Review at 1 n. 1.
[3] CR 12(b) provides: "Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter. . . ."
[4] Courts have also noted the tribal interest in maintaining the distinction between tribal entities and separate corporate entities in the context of sovereign immunity. The Arizona Supreme Court observed that since "[n]on-Indians will undoubtedly think long and hard before entering into business relationships with Indian corporations that are immune from suit," extending sovereign immunity to corporations merely associated with tribes "may well retard a tribe's economic growth." Dixon v. Picopa Constr. Co., 160 Ariz. 251, 772 P.2d 1104, 1112 (1989). The majority's broad application of sovereign immunity, without an established factual record, fails to acknowledge the importance of maintaining an ascertainable distinction between tribal entities and separate corporate entities.
[5] To the extent that other jurisdictional issues involve separate factual inquiries, such as whether the corporations waived tribal sovereign immunity and whether state employment laws apply, they may also be decided by the trial court on remand.