[No. 33856-4-II.   Division Two.   December 19, 2006.]

JOYCE TIMSON, *Appellant*, v. PIERCE COUNTY FIRE DISTRICT No. 15 ET AL., *Respondents*.

*Roblin J. Williamson*, for appellant.

*John W. Schedler* (of *Lee Smart Cook Martin & Patterson, P.S., Inc.*) and *Robert M. McKenna, Attorney General*, and *Kenneth D. Orcutt, Assistant*, for respondents.

¶1 PENOYAR, J. — Joyce Timson appeals a summary judgment dismissal of her action for negligent infliction of emotional distress against Pierce County Fire District No. 15 (Fire District) and the Washington State Patrol. We affirm.

## FACTS

¶2 Timson is A.T.'s mother. Timson and A.T. live with Don Anderson and his son, B.A. At about 4:00 PM on July 26, 2001, A.T. and B.A. were passengers in a sport utility vehicle driven by Joshua Godeaux. Godeaux failed to stop at an intersection and caused a serious vehicle collision. At the time of the collision, Godeaux was seated in the driver's seat, B.A. in the front passenger seat, and A.T. in the rear

passenger seat. A.T. was not wearing her seat belt and was thrown to the rear area of the sport utility vehicle, behind the rear passenger seat.

¶3 At approximately 4:06 PM, Fire District personnel were dispatched to the accident. Upon arrival, fire fighter Eric Skogen did a "scene size-up and initial patient triage." Clerk's Papers (CP) at 31. He asked two bystanders how many patients were involved. The bystanders responded that there were three injured parties. Godeaux was trapped in the driver's seat of the vehicle and firefighter Skogen immediately began extricating him. Godeaux's injuries appeared severe and fire fighter Skogen requested an airlift to transport him to the hospital. Fire fighter Skogen asked Godeaux who else was in the vehicle. Godeaux responded, "My buddy made it out." CP at 33.

¶4 After extricating Godeaux, Fire District personnel testified that a witness approached them and said that one of the accident victims was asking about his "sister." CP at 31. Fire District personnel looked in the back of the vehicle, noticed that the rear area of the sport utility vehicle was filled with several items including a spare tire and wheel, and failed to identify any other victims in the rear of the vehicle. A witness to the accident testified that he also looked in the back seat of the vehicle and did not see any other victims.

¶5 The State Patrol received a report of the collision, and Trooper Steve Ostrander arrived on the scene at 4:10 PM. Upon arrival, Trooper Ostrander saw Fire District personnel attending to three injured persons—B.A., Godeaux, and the driver of the other vehicle involved in the accident. He noticed that B.A. and the driver of the other vehicle were lying on the ground and that Godeaux was trapped in the vehicle. He saw Fire District personnel extricating Godeaux from the vehicle.

¶6 Trooper Ostrander questioned B.A. about the collision. B.A. appeared to be confused and in shock. He could not initially identify where he was or where he was going when the collision occurred. Trooper Ostrander also spoke

with the driver of the other vehicle. She explained that Godeaux failed to stop at the stop sign and the sport utility vehicle collided with her vehicle. Trooper Ostrander did not attempt to speak with Godeaux because he appeared combative and uncooperative. Nor did he question B.A. or Godeaux about whether there were any other passengers in the vehicle.

¶7 By about 4:30 PM, Godeaux had been extracted from the vehicle and B.A. and Godeaux were being prepared to be transported to the hospital. Timson and Anderson then arrived at the accident scene. Timson testified that, upon arriving, she approached the accident scene and asked a "trooper" if he knew where A.T. was. CP at 109. She said that the "trooper" told her that the only occupants of the vehicle were Godeaux and B.A..

¶8 She testified that she said, "My daughter [A.T.] was with the boys," and that a "policeman" said to her, "There's no one else in the car, ma'am." CP at 36. She testified that B.A. was then wheeled past her on a stretcher and that he said that A.T. was with Godeaux and him at the time of the accident.

¶9 Timson testified that she then looked at the vehicle and immediately saw A.T. in the back of the vehicle. "I could see her—her butt, her skin. . . . " CP at 37. Timson began screaming for help and ran toward the vehicle. She testified that she opened the rear passenger door, sat on the back seat, and looked at A.T. in the rear of the vehicle. She testified that A.T. was in plain sight and that nothing covered A.T. that would have prevented rescue workers from seeing her if they had looked. Timson testified that she continued screaming for help, brushed A.T.'s hair from her face, but did not move A.T. because she was concerned that she might increase the severity of A.T.'s injuries.

¶10 Trooper Ostrander's testimony differed from Timson's. He testified that when Timson arrived on the scene and asked about A.T., he, not Timson, asked B.A. if A.T. was in the vehicle and that B.A. told him that A.T. was in the vehicle. Trooper Ostrander testified that Timson then

walked over to the vehicle, lifted something in the rear area of the sport utility vehicle, and found A.T.

¶11 Fire District personnel immediately attended to A.T. She was trapped in the vehicle and rescue workers had to spread the rear tailgate with hydraulic tools to remove her. She immediately became a priority patient and was assigned to the airlift that was initially requested for Godeaux. A.T. was transported to the hospital by the airlift at 5:00 PM. Godeaux and B.A. were taken to the hospital six minutes after A.T., at 5:06 PM, by ground transportation.

¶12 Timson sued the state patrol and the Fire District for negligence and for damages resulting from the emotional distress she suffered due to her discovering her daughter in the rear of the sport utility vehicle at the accident scene.

¶13 For more than two months, counsel for the Fire District corresponded with Timson's counsel, discussing the public duty doctrine in an attempt to persuade Timson to dismiss her lawsuit because her claims were without merit. Timson did not dismiss her case and, on February 8, 2005, the Fire District filed a motion for summary judgment. The Fire District also asked the trial court to find that Timson's claims were frivolous and to award them attorney fees.

¶14 The trial court granted summary judgment in favor of the Fire District and the state patrol, finding that Timson failed to establish that they owed her a duty. The trial court found that Timson's claims were not frivolous and declined to award the Fire District attorney fees. Timson appeals the trial court's entry of summary judgment and the Fire District cross-appeals, arguing that Timson's claims were frivolous and that it was entitled to attorney fees.

## ANALYSIS

¶15 Timson contends that the court erred in finding that the public duty doctrine precludes the finding of a duty to Timson by the Fire District and state patrol. She first urges us to abolish the public duty doctrine. She also asserts that

(1) the public duty doctrine is meant to apply only to a government's regulatory authority and, therefore, does not apply to her case and (2) even if the public duty doctrine applies, her claims are not barred because they fall within the exemption for legislative intent.

¶16 The Fire District counters that we should not abolish the public duty doctrine because the public duty doctrine is well-settled law and that the doctrine bars Timson's claims. The state patrol asserts that none of the four exceptions to the doctrine applies to Timson and that the Fire District and the state patrol are therefore immune from liability in tort.

A. STANDARD OF REVIEW

¶17 When reviewing an order on summary judgment, we engage in a de novo review and perform the same inquiry as the trial court. *Cummins v. Lewis County*, 156 Wn.2d 844, 852, 133 P.3d 458 (2006). Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Cummins*, 156 Wn.2d at 852. In a negligence action, the determination of whether an actionable duty was owed to the plaintiff represents a question of law for the court to decide. *Cummins*, 156 Wn.2d at 852. We review a question of law de novo. *Cummins*, 156 Wn.2d at 852. Therefore, we review de novo whether an actionable duty existed in Timson's case.

B. PUBLIC DUTY DOCTRINE

¶18 The public duty doctrine is a framework for determining when a government entity owes a duty to a plaintiff suing for negligence. *Cummins*, 156 Wn.2d at 853. It allows a suit against a government entity for negligent conduct only if there is a duty owed to the individual, separate and apart from a duty to the public in general. *Cummins*, 156 Wn.2d at 852 (quoting *Tayor v. Stevens County*, 111 Wn.2d 159, 163, 759 P.2d 447 (1998)). The threshold determination in any negligence action is whether a

duty of care is owed to the plaintiff. *Babcock v. Mason County Fire District No. 6*, 144 Wn.2d 774, 784-85, 30 P.3d 1261 (2001). If there is no actionable duty, a negligence action may not proceed. *Babcock*, 144 Wn.2d at 784-85. The public duty doctrine is a tool courts use to determine if a municipality owes a duty. *Moore v. Wayman*, 85 Wn. App. 710, 717, 934 P.2d 707 (1997).

¶19 In RCW 4.96.010, the legislature removed the defense of sovereign immunity for local governmental entities being sued in tort. *Garnett v. City of Bellevue*, 59 Wn. App. 281, 285, 796 P.2d 782 (1990). Local governmental entities are not immune if the entity acts in a governmental or in a proprietary capacity "to the same extent as if they were a private person or corporation." RCW 4.96.010(1).

¶20 In *Donohoe v. State*, 135 Wn. App. 824, 142 P.3d 654, 662-63 (2006), we recognized that the doctrine remains good law in Washington and explained that there is no Washington case that extends a special relationship and creates a duty in regard to a governmental entity exercising a regulatory function. We are not persuaded by Timson's argument to abandon the public duty doctrine or that the public duty doctrine is meant to apply to only regulatory functions.

¶21 In this case, the duty owed to Timson was the duty that the Fire District and state patrol owe to the public in general. Timson was not injured in the accident; the Fire District and state patrol did not render aid to her. Any duty owed to Timson was the same as that owed to the public in general. Thus, the public duty doctrine bars her action. Therefore, we affirm, unless an exception to the public duty doctrine exists.

C. "Exceptions" to the Public Duty Doctrine

¶22 There are four so-called "exceptions" to the public duty doctrine: (1) legislative intent, (2) failure to enforce, (3) the rescue doctrine, and (4) a special relationship. *Babcock*, 144 Wn.2d at 785-86. If an "exception"

applies, then an action may proceed against a governmental entity.[1]

¶23 Relying on the legislative intent expressed in RCW 18.71.210,[2] Timson argues that the legislative intent exception applies to her claims and that her action may proceed. We disagree.

██ ██ ¶24 RCW 18.71.210 applies to emergency medical service personnel, allowing them immunity from liabil-

---

[1] It is slightly inconsistent to call these "exceptions" to the public duty doctrine because, like the public duty doctrine itself, the exceptions allow government officials to be held liable in certain circumstances. Regardless, throughout Washington cases, they are referred to as "exceptions," and we will continue to do so here.

[2] RCW 18.71.210 provides:

No act or omission of any physician's trained emergency medical service intermediate life support technician and paramedic, as defined in RCW 18.71.200, or any emergency medical technician or first responder, as defined in RCW 18.73.030, done or omitted in good faith while rendering emergency medical service under the responsible supervision and control of a licensed physician or an approved medical program director or delegate(s) to a person who has suffered illness or bodily injury shall impose any liability upon:

(1) The physician's trained emergency medical service intermediate life support technician and paramedic, emergency medical technician, or first responder;

(2) The medical program director;

(3) The supervising physician(s);

(4) Any hospital, the officers, members of the staff, nurses, or other employees of a hospital;

(5) Any training agency or training physician(s);

(6) Any licensed ambulance service; or

(7) Any federal, state, county, city or other local governmental unit or employees of such a governmental unit.

This section shall apply to an act or omission committed or omitted in the performance of the actual emergency medical procedures and not in the commission or omission of an act which is not within the field of medical expertise of the physician's trained emergency medical service intermediate life support technician and paramedic, emergency medical technician, or first responder, as the case may be.

This section shall apply also, as to the entities and personnel described in subsections (1) through (7) of this section, to any act or omission committed or omitted in good faith by such entities or personnel in rendering services at the request of an approved medical program director in the training of emergency medical service personnel for certification or recertification pursuant to this chapter.

This section shall not apply to any act or omission which constitutes either gross negligence or willful or wanton misconduct.

ity for actions or omissions done in good faith while rendering emergency medical service. This statute does not create a duty owed to family members of injured persons. *See* RCW 18.71.210. Timson did not receive emergency lifesaving services from the Fire District and the state patrol, and this statute does not apply to her. Therefore, no exception to the public duty doctrine applies to Timson, and her action is barred.

### D. BYSTANDER NEGLIGENCE

¶25 Timson relies on *Hunsley v. Giard*, 87 Wn.2d 424, 553 P.2d 1096 (1976) for the proposition that rescue workers owed a duty to her under the "bystander negligence" doctrine because the duty owed to A.T. transferred to her. The state patrol and the Fire District respond that the driver of the vehicle inflicted the injuries, not the rescue workers, and the driver of the vehicle caused any emotional distress, not the rescue workers.

¶26 *Hunsley* was the first Washington case to recognize a cause of action for bystander negligent infliction of emotional distress. *Berger v. Sonneland*, 144 Wn.2d 91, 113, 26 P.3d 257 (2001). However, Timson's reliance on *Hunsley* is misplaced because she was not a bystander to the accident. A bystander is one who is present when an event takes place, but who does not become directly involved in it. BLACK'S LAW DICTIONARY 214 (8th ed. 2004). She cites no authority for the proposition that a duty to A.T. is a duty to her. The Fire District argues that we need not consider unsupported legal arguments. It is true that we will not review an issue that was addressed by an inadequate argument or that is given only passing treatment. *State v. Thomas*, 150 Wn.2d 821, 868-69, 83 P.3d 970 (2004). Therefore, we need not address Timson's unsupported argument that a duty to A.T. is a duty to Timson.

### E. FRIVOLOUS CLAIMS AND ATTORNEY FEES

¶27 The Fire District contends that the trial court erred in denying its claim for attorney fees based on

Timson's frivolous lawsuit. The decision of whether to award attorney fees for a frivolous lawsuit is within the trial court's discretion and we will not disturb the court's decision absent a clear showing of abuse. *Rhinehart v. Seattle Times, Inc.*, 59 Wn. App. 332, 339-40, 798 P.2d 1155 (1990).

> In any civil action, the court having jurisdiction may, upon written findings by the judge that the action, counterclaim, cross-claim, third party claim, or defense was frivolous and advanced without reasonable cause, require the nonprevailing party to pay the prevailing party the reasonable expenses, including fees of attorneys, incurred in opposing such action, counterclaim, cross-claim, third party claim, or defense.

RCW 4.84.185. The purpose of this statute is to discourage frivolous lawsuits and to compensate the targets of frivolous lawsuits for their fees and costs incurred in defending meritless cases. *Kearney v. Kearney*, 95 Wn. App. 405, 416, 974 P.2d 872 (1999). If an action can be supported by *any rational argument*, then the trial court properly exercised its discretion in not finding an action to be frivolous. *Rhinehart*, 59 Wn. App. at 340.

¶28  In this case, the frivolity of Timson's claims was not addressed in oral argument on the summary judgment motion and the basis of the trial court's ruling is not clear. Given the confusion surrounding the public duty doctrine, on this record we find no abuse of discretion by the trial court's refusal to find Timson's claims frivolous.

¶29  We affirm.

ARMSTRONG and QUINN-BRINTNALL, JJ., concur.