# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| WENDELL LONG, an individual, | ) | No. 77007-1-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| SNOQUALMIE GAMING | ) | |
| COMMISSION, a political subdivision | ) | |
| of the Snoqualmie Indian Tribe, | ) | |
| | ) | |
| Respondent. | ) | FILED: February 25, 2019 |
| | ) | |

LEACH, J. — Wendell Long appeals the superior court's dismissal of his lawsuit against the Snoqualmie Gaming Commission (Commission) for lack of jurisdiction due to the Commission's sovereign immunity and Long's failure to state a claim. Because the Commission has sovereign immunity and did not waive it, we affirm.

## FACTS

The Snoqualmie Indian Tribe (Tribe) is a federally recognized sovereign Indian tribe. The Indian Gaming Regulatory Act requires that tribes enter into gaming compacts with states to authorize class III (casino-style) gaming on tribal lands.[1] The Tribe entered into a gaming compact with Washington State.[2] It

---

[1] 25 U.S.C. § 2710(d)(1)(C).
[2] Tribal-State Compact for Class III Gaming Between the Snoqualmie Indian Tribe and the State of Washington (2002 & amend. 2008).

obligated the Tribe to establish an independent "Tribal Gaming Agency" to regulate the gaming activities on tribal land.[3] To satisfy this obligation the Tribe adopted the Snoqualmie Tribe Tribal Gaming Act, which established the Commission.[4] The STTGA declares the Commission "independent of the Tribal Council in all matters within the Commission's purview."[5] It also provides the Commission with "sovereign immunity from suit absent express consent from the Tribal Council."[6]

The compact gives the Commission the "primary responsibility for the on-site regulation, control and security of the Gaming Operation authorized by [the] Compact" and for its enforcement on Snoqualmie tribal lands.[7] The Commission must report "incident and investigation reports and final dispositions to the State Gaming Agency."[8] The Commission has concurrent jurisdiction with the State Gaming Agency to investigate compact violations and to bring administrative charges against individuals or business entities licensed under the compact for violation of tribal and state law.[9]

---

[3] Tribal-State Compact § VI(B).
[4] Snoqualmie Tribe Tribal Gaming Act § 7.01, (2015) (STTGA), http://www.snoqualmietribe.us/sites/default/files/gaming_act.pdf.
[5] STTGA § 7.04.
[6] STTGA § 7.02.
[7] Tribal-State Compact § VI(B).
[8] Tribal-State Compact § VI(F).
[9] Tribal-State Compact § VI(F).

The Commission has the exclusive authority to issue, suspend, and revoke gaming licenses for the Snoqualmie Casino's employees, vendors, and contractors.[10]

On March 27, 2015, the Tribe hired Long as the chief executive officer of the Snoqualmie Casino.[11] The Tribe and Long signed a written agreement stating the terms of Long's employment. In this contract, Long warranted "that there [were] no impediments to his . . . being licensed by the Snoqualmie Gaming Commission for gaming purposes" and "to maintain [his] gaming license in good standing." Long applied to the Commission for this license and received it in May 2015.

The contract addressed the Tribe's sovereign immunity:

> Except as expressly provided herein, nothing in this Agreement shall be deemed or construed as a waiver or limitation of the Tribe's inherent sovereign immunity from unconsented suit. The Tribe hereby grants a limited waiver of sovereign immunity to Employee for the express and limited purpose of adjudicating a dispute arising out of the terms of this Agreement in the Snoqualmie Tribal Court. Any such claim must be filed with the Tribal Court within one hundred-twenty (120) days of the act or omission giving rise to the claim. This waiver does not extend to nor allow for any award of punitive or exemplary damages, or attorneys' fees against the Tribe.

---

[10] STTGA § 7.03, §§ 9-11.

[11] The Tribe is a federally recognized "Indian Entity." Indian Entities Recognized and Eligible To Receive Services from the United States Bureau of Indian Affairs, 82 Fed. Reg. 4915, 4918 (Jan. 17, 2017).

In October 2015, the Tribe fired Long. In December 2015, the Tribe sued Long in King County Superior Court for breach of fiduciary duty, conversion, and unjust enrichment. Long answered and counterclaimed.

On January 22, 2016, before the expiration of Long's gaming license, the Commission voted to suspend it pending a revocation hearing. Long sued the Commission in tribal court to enjoin the revocation of his license. The Commission asked the tribal court to dismiss this lawsuit for lack of subject matter jurisdiction. It did.

After an administrative hearing, the Commission revoked Long's license. Long appealed this revocation to the Snoqualmie Tribal Court. In August 2016, the tribal court found that the Commission's decision was arbitrary and capricious and remanded the case for further proceedings.[12] In September 2016, the Commission, on remand, affirmed its earlier decision and issued a final decision revoking Long's license. In response, Long filed a new complaint against the Commission in tribal court.[13]

In January 2017, a settlement agreement ended the litigation in superior court between Long and the Tribe started by the Tribe. The only parties to the

[12] The court indicated that the Commission's written decision revoking Long's license failed to sufficiently link the findings to the dishonesty and lack of integrity the Commission claimed violated the gaming act.

[13] The Commission states in its brief that on November 13, 2017, the tribal court denied Long's motion for summary judgment, granted the Commission's motion for summary judgment, and affirmed the Commission's final decision to revoke Long's license. Our record does not contain this tribal court decision.

settlement agreement are Long and the Tribe. The agreement does not mention the Commission. The agreement describes a single lawsuit, the one started by the Tribe. The agreement makes no reference to either the proceedings between Long and the Commission or Long's gaming license. The Commission and its counsel did not know about the settlement until January 11, 2017.

The settlement agreement states that Long and the Tribe waive all claims against each other incurred before the agreement, including but not limited to those upon which the suit was based.[14] The agreement includes a limited waiver of sovereign immunity: "The Tribe hereby expressly and unequivocally waives any and all claim(s) of sovereign immunity for purposes of either Party seeking relief in Washington State Superior Court, King County, as outlined in this paragraph, for purposes of resolving any dispute arising under this Agreement."

After the settlement, Long asked the Commission to rescind the revocation of his gaming license. It refused. In January 2017, he sued the

---

[14] Paragraph 5 states,

The Parties agree that the agreements herein are made entirely for the purpose of a compromise and settlement of a litigated dispute. Neither the consideration set forth herein, nor the compromise and settlement of said dispute, nor anything contained herein shall be construed to be an admission by any Party of liability to any other Party or to any other person or entity, nor shall it be construed to create any rights or interests in third persons or entities. The Parties agree and acknowledge that the fact of this settlement may not be used by any Party to prove or establish liability in any other action or proceeding of any kind whatsoever.

Commission in superior court, contending that the Commission violated the terms of the settlement agreement by refusing to rescind the revocation of his gaming license. Long submitted a number of discovery requests to the Commission.

The Commission asked the superior court to dismiss the lawsuit for lack of subject matter jurisdiction due to its sovereign immunity and to stay discovery pending resolution of its dismissal request. The superior court granted the Commission's request to stay discovery. Later, the superior court dismissed Long's lawsuit. It included the following statement in its order: "[T]he Court notes that if the Commission is deemed a party to the [s]ettlement as Plaintiff asserts and his license was revoked prior to the [s]ettlement, Plaintiff appears to have released his 'claim' for license reinstatement by virtue of the [s]ettlement agreement." The superior court denied Long's motion for reconsideration. Long appeals.

## STANDARD OF REVIEW

We review the superior court's dismissal of a claim under CR 12(b)(1) or CR 12(b)(6) de novo.[15] Once a defendant requests dismissal under CR 12(b)(1) on the basis of sovereign immunity, the party asserting jurisdiction has the burden of proving the other party has no immunity or waived it.[16]

---

[15] Wright v. Colville Tribal Enter. Corp., 159 Wn.2d 108, 111, 147 P.3d 1275 (2006); Outsource Servs. Mgmt. LLC v. Nooksack Bus. Corp., 172 Wn. App. 799, 807-08, 292 P.3d 147 (2013).
[16] Outsource Servs. Mgmt. LLC, 172 Wn. App. at 807.

We review a superior court's reconsideration decisions and orders to stay proceedings for abuse of discretion.[17] A court abuses its discretion when it bases its decision on untenable grounds or reasons.[18]

ANALYSIS

Long claims that the tribal council waived the Commission's sovereign immunity. He also claims the court should have granted his motion for reconsideration. Finally, he contends the court abused its discretion by staying discovery pending disposition of the Commission's dismissal request. Long fails to establish that the tribal council waived the Commission's immunity. Since the superior court properly dismissed the case, we decline to review his other assertions.

Lack of Jurisdiction Due to Sovereign Immunity

The parties agree that the Commission has sovereign immunity. But Long asserts that his settlement agreement with the Tribe waived the Commission's immunity for its licensing decisions. Long supports his position with two arguments. First, he claims any waiver of sovereign immunity by the Tribe waives that immunity for its agencies. Second, he asserts that the agreement's

---

[17] King v. Olympic Pipeline Co., 104 Wn. App. 338, 348, 16 P.3d 45 (2000); Kohfeld v. United Pac. Ins. Co., 85 Wn. App. 34, 40, 931 P.2d. 911 (1997).
[18] Olympic Pipeline Co., 104 Wn. App. at 348.

waiver provision unambiguously includes the Commission. We find both arguments unpersuasive.

Federally recognized Indian tribes are "separate sovereigns pre-existing the Constitution."[19] These tribes have common law sovereign immunity as "a necessary corollary to Indian sovereignty and self-governance."[20] This immunity extends to a tribe's agencies and instrumentalities.[21] Washington courts must and do apply federal law to resolve whether tribal sovereign immunity applies.[22] So, contrary to Long's assertions, a settlement agreement provision requiring that it be interpreted in accordance with the substantive law of Washington State does not change the law this court applies to resolve the immunity issue.

Absent a tribe's express waiver of immunity or congressional abrogation, that tribe may not be sued in state or federal court.[23] In either event, any waiver

---

[19] Santa Clara Pueblo v. Martinez, 436 U.S. 49, 56, 98 S. Ct. 1670, 56 L. Ed. 2d 106 (1978).

[20] Three Affil. Tribes of Fort Berthold Reservation v. Wold Eng'g, 476 U.S. 877, 890, 106 S. Ct. 2305, 90 L. Ed. 2d 881 (1986); see also, Foxworthy v. Puyallup Tribe of Indians Ass'n, 141 Wn. App 221, 225-26, 169 P.3d 53 (2007); Wright, 159 Wn.2d at 112 (citing Santa Clara Pueblo, 436 U.S. at 59).

[21] Kiowa Tribe of Okla. v. Mfg. Techs., Inc., 523 U.S. 751, 757-58, 118 S. Ct. 1700, 140 L. Ed. 2d 981 (1998) (citing Mescalero Apache Tribe v. Jones, 411 U.S. 145, 93 S. Ct. 1267, 36 L. Ed. 2d 114 (1973)); Wright, 159 Wn. 2d at 112.

[22] Auto. United Trades Org. v. State, 175 Wn.2d. 214, 226, 285 P.3d 52 (2012) (citing Kiowa Tribe of Okla., 523 U.S. at 754).

[23] Auto. United Trades Org., 175 Wn.2d at 226 (citing Kiowa Tribe of Okla., 523 U.S. at 754).

"must be unequivocally expressed" and cannot be implied.[24] A tribe can limit the extent of its waiver to a particular claim, a particular forum, or a particular party.[25]

The Commission suggests that federal common law requires a court to interpret any claimed immunity waiver "liberally in favor of the Tribe and restrictively against the claimant." We do not address this claim because Long's argument fails without application of this broad rule of construction.

The Tribe's constitution gives the tribal council the exclusive authority to waive sovereign immunity and requires that any waiver be express and unambiguous.[26] Consistent with its constitution, the Tribe's Judiciary Act states that "all Tribal agencies shall be immune from suit for any acts or omissions done during the performance of Tribal duties" and gives the tribal council exclusive authority to waive immunity for any of these bodies.[27]

The STTGA, which created the Commission, includes one "limited, irrevocable waiver of sovereign immunity" for disputes between patrons and casino staff.[28] The STTGA states that "nothing in [it] shall be construed as a waiver of the sovereign immunity of the Commission, Tribe, or any other governmental subdivision or economic enterprise of the Tribe."[29] Again,

---

[24] Santa Clara Pueblo, 436 U.S. at 58 (internal quotation marks omitted).
[25] Auto. United Trades Org., 175 Wn.2d at 227.
[26] SNOQUALMIE TRIBE CONST. art. 1, § 3.
[27] Snoqualmie Tribe Judiciary Act § 10.
[28] STTGA § 12.06(B).
[29] STTGA § 15.

consistent with the tribe's constitution, it states that any waiver of immunity for the Commission is not effective unless approved by a resolution of the tribal council.[30]

The Commission has hearing regulations. They include "an express and limited waiver" of sovereign immunity for the sole purpose of an appeal of a final tribal gaming license revocation to the tribal court.[31] The regulations limit the waiver to this forum and authorize the tribal court to decide whether a final Commission decision revoking a tribal gaming license is "arbitrary and capricious, or contains an error of law."[32] The regulations condition this waiver on the tribal court conducting the appeal confidentially.[33] It does not "extend to any further appeal beyond the Tribal Court."[34] The regulations also limit the relief available in the tribal court to an affirmation or a remand to the Commission for further proceedings.[35] Finally, the regulations conclude with this statement: "The Commission explicitly does not waive its immunity from [among other things] suit from matters collateral to the appealed decision [or] matters arising from the same set of facts or controversy as the appealed decision."[36]

---

[30] STTGA § 15.
[31] Snoqualmie Tribe Gaming Comm'n Hr'g Regs. § 2.10.
[32] Snoqualmie Tribe Gaming Comm'n Hr'g Regs. § 2.10(A)(6).
[33] Snoqualmie Tribe Gaming Comm'n Hr'g Regs. § 2.10(A)(5).
[34] Snoqualmie Tribe Gaming Comm'n Hr'g Regs. § 2.10(C).
[35] Snoqualmie Tribe Gaming Comm'n Hr'g Regs. § 2.10(D).
[36] Snoqualmie Tribe Gaming Comm'n Hr'g Regs. § 2.10(E).

*A. Coextensive Immunity*

Long correctly notes that the STTGA states that the Commission possesses "all of the rights, privileges, and immunities of the Tribe." He asserts that because the Tribe and the Commission have coextensive sovereign immunity, any waiver of that immunity by the Tribe also waives the Commission's immunity. Since the Tribe waived immunity for some purposes in its settlement agreement with Long, he contends that this waiver also waived the Commission's immunity. We disagree.

The Commission's exclusive authority over gaming licenses and its relationship to the Tribe and the Washington State Gambling Commission show that any claimed waiver of its sovereign immunity must be analyzed independently of the Tribe's waiver. The STTGA adopted by the Tribe, the Commission's regulations, and Long's employment contract all recognize the unique and independent status of the Commission.

The STTGA establishes the Commission: **"Establishment of the Commission.** The Tribe hereby establishes the Commission as an independent governmental subdivision of the Tribe."[37] The STTGA also describes the scope of the Commission's independence: **"Importance of Independence of Commission.** The Tribe recognizes the importance of an independent gaming

---

[37] STTGA § 7.01.

commission in maintaining a well-regulated Gaming Operation. The Commission shall be independent of the Tribal Council in all matters within the Commission's purview."[38]

Tribal council members are not eligible to serve on the Commission.[39] The primary management officials and key employees of the Tribe's gaming operation must have a gaming license issued by the Commission.[40] The Commission has exclusive authority to deny, suspend, and revoke any tribal gaming license.[41] The tribal council does not have any authority to review the Commission's gaming license decisions.[42]

The Commission has the power to adopt regulations implementing the STTGA and "generally to promulgate Regulations relating to gaming on the Tribe's Indian Lands."[43] While the Commission must provide notice of proposed regulations to the tribal council and consider its comments, the Council does not control the Commission's rule- making power.[44]

The Commission's regulations provide for a limited right of review by the tribal court and a corresponding express and limited waiver of immunity:

---

[38] STTGA § 7.04.
[39] STTGA § 7.07(B)(1).
[40] STTGA § 11.04.
[41] STTGA § 7.08, .09.
[42] STTGA § 7.04.
[43] STTGA § 7.11(C).
[44] STTGA § 7.11(C)(1)(b), (c).

### Section 2.10   Appeals

The Commission hereby authorizes an express and limited waiver of its immunity from suit for the sole purpose of an appeal to the Snoqualmie Tribal Court only from a final decision to revoke a tribal gaming license reached pursuant to these Regulations, which waiver is subject further to the limitations set out in this Section 2.10. <u>This limited waiver of immunity for the purposes of allowing appeals of final revocation decisions to the Tribal Court shall be construed narrowly, and any appeal outside the scope of this Section 2.10 shall not be deemed to be within the scope of this limited waiver.</u>

. . . .

(D)   This limited waiver of sovereign immunity for purposes of appeal is further limited to decisions by the Tribal Court that would either affirm the Commission's or that remand to the Commission for further proceedings. <u>There is no waiver of the Commission's immunity to any claims for any other kind of relief, including but not limited to damages, injunctive relief, attorney fees, or any other relief.</u>

(E)   The express, limited waiver of sovereign immunity shall only apply to the appeal at hand. <u>The Commission explicitly does not waive its immunity from suit from matters collateral to the appealed decision, matters arising from the same set of facts or controversy as the appealed decision, or matters beyond the revocation of a gaming license.</u>[45]

(Emphasis added.)

The employment contract between Long and the Tribe recognizes the Commission's independence.   In this agreement, Long warrants "that there [were] no impediments to his . . . being licensed by the Snoqualmie Gaming Commission for gaming purposes" and "to maintain [his] gaming license in good standing."   The Tribe makes no corresponding warranty that Long's license application will be approved by the Commission.   Instead, the agreement

---

[45] Snoqualmie Tribe Gaming Comm'n Hr'g Regs. § 2.10.

No. 77007-1-I / 14

requires that Long seek the license from the Commission, independent of his employment with the Tribe.

Long asserts that if this court affirms the superior court's conclusion that the STTGA establishes the Commission's independence, the record establishes that the Tribe in fact controls the Commission to such an extent that the Commission is not independent. He points to the declaration by Bopha Yath, a former agent of the Commission, who stated that the Tribe and the Commission do not always act independently for licensing purposes. We reject this assertion for two reasons.

First, "jurisdiction over a party asserting tribal sovereign immunity is a question of law."[46] Long cites no authority to support his contention that this court should consider Yath's declaration to resolve this legal issue. Second, Yath's declaration describes events that occurred before November 2014. The Tribe adopted the STTGA on January 22, 2015. Thus, Yath provides no information about the conduct of the Tribe and the Commission under the STTGA.

We conclude that the Commission's independent role in Indian land gaming regulation requires that its immunity be analyzed separately from any waiver of immunity by the Tribe. This means that the Tribe's waiver of its own

---

[46] Wright, 159 Wn.2d at 111.

-14-

immunity, without more, does not waive the Commission's sovereign immunity in matters falling within its exclusive purview, like gaming license revocation. A contrary view would frustrate the independence of the Commission contemplated by the STTGA and the compact between the State of Washington and the Tribe. It would also ignore the carefully worded limited waivers found in the Commission's regulations.

*B. Broad Application of the Language of the Agreement*

Long claims that the settlement agreement provision waiving sovereign immunity clearly and unambiguous waives the immunity of the Commission. We disagree.

A waiver of tribal sovereign immunity "must be unequivocally expressed."[47] Long claims that two settlement agreement provisions, when read together, unequivocally waive the Commission's immunity from suit over its gaming license decision for Long:

> 2. Effective upon execution of this Agreement, the Parties, on behalf of themselves, and all persons, spouses, entities, or agencies claiming by, through or under them, and their heirs, successors, administrators, trustees and assigns, hereby knowingly and voluntarily unequivocally, irrevocably and absolutely grant and provide to the other Party to the full extent permitted by law, a full and complete general release and discharge of any and all claims, known and unknown, asserted and unasserted, that any party may have against any other Party as of the date of execution of this Agreement . . . .
>
> . . . .

---

[47] Santa Clara Pueblo, 436 U.S. at 58; Wright, 159 Wn.2d at 115.

No. 77007-1-I / 16

11. This Agreement shall be construed, enforced, and interpreted in accordance with the substantive law of the State of Washington. Any dispute arising out of, or related to, this Agreement shall be brought in Washington State Superior Court, King County, and the Parties hereby irrevocably submit to the jurisdiction of the Court to resolve any dispute arising under this Agreement and waive any right to challenge the jurisdiction of said Court or to alter or change venue. The Tribe hereby expressly and unequivocally waives any and all claim(s) of sovereign immunity for purposes of either Party seeking relief in Washington State Superior Court, King County, as outlined in this paragraph, for purposes of resolving any dispute arising under this Agreement.

We make several observations about the settlement agreement. First, the Commission is not a party to the agreement and did not know about it before the parties signed it. Second, the agreement makes no mention of the proceedings between the Commission and Long or any tribal court decision. Third, the agreement makes no mention of Long's gaming license. Fourth, the agreement does not describe any action to be taken or abstained from by the Commission.

We also note the Commission regulations addressing its sovereign immunity. They contain a limited waiver for the sole purpose of an appeal to tribal court to review a final gaming license revocation. They limit the relief available in the tribal court to an affirmation of the Commission's decision or a remand to the Commission for further proceedings.[48] They prohibit any appeal beyond tribal court. Finally, the regulations conclude with this statement: "The Commission explicitly does not waive its immunity from [among other things] suit

---

[48] Snoqualmie Tribe Gaming Comm'n Hr'g Regs. § 2.10(D).

-16-

from matters collateral to the appealed decision [or] matters arising from the same set of facts or controversy as the appealed decision."[49]

Given the clear limits of the regulation waiver (both in forum and relief), the Commission's independence in gaming license matters, the absence of any mention of the gaming license dispute in the settlement agreement, and the circumstance that the Commission is not a party to that agreement, the contract language relied on by Long cannot, as a matter of law, be described as an unequivocal waiver of the Commission's immunity.

Long suggests that had the Tribe wanted to exclude the Commission from the settlement agreement waiver it could have, asserting that because the agreement does not exclude the Commission, the waiver extends to it. This argument stands tribal immunity law on its head by ignoring Long's burden of showing subject matter jurisdiction.[50] Here, Long must show an express and unambiguous waiver of immunity. This means that the Commission does not have the burden of showing the absence of a waiver.

Long asserts that the context of the waiver clause in the agreement requires extending that waiver to all agencies of the Tribe. He correctly notes that paragraph 2 requires the parties to release one another and "all persons, spouses, entities or agencies claiming by, through or under them" from claims

---

[49] Snoqualmie Tribe Gaming Comm'n Hr'g Regs. § 2.10(E).
[50] See Outsource Servs. Mgmt. LLC, 172 Wn. App. at 807.

arising prior to the agreement. He claims that this provision is superfluous unless it is interpreted to extend the immunity waiver to the Commission. But this provision has meaning if it is interpreted to extend the scope of the release to derivative entities without extending the scope of the waiver.

Finally, Long claims the agreement applies to the Commission because it contains an "unlimited waiver" in contrast to the "limited waiver" in his employment agreement. But the settlement agreement has limitations too. It is limited in time "as of the date of execution of th[e] Agreement." The waiver is limited to "dispute[s] arising under th[e] Agreement." The Commission had made a final decision in the dispute between the Commission and Long before the agreement was signed. Long points to no language in the agreement about his gaming license. He does not persuasively explain how any dispute about his revoked license arises under the settlement agreement. He certainly does not explain how his cobbled argument describes an unequivocal expression of waiver for the gaming license issue.

That the Commission based its decision on the same facts as the Tribe also does not matter. The Commission's regulations state clearly that the limited waiver for appeals of licensing decisions to the tribal court does not extend to

other "suit[s] from matters collateral to the appealed decision [or] matters arising from the same set of facts or controversy as the appealed decision."[51]

Since the tribal council did not unequivocally waive the Commission's sovereign immunity in the settlement agreement, the superior court properly dismissed Long's lawsuit for lack of subject matter jurisdiction.

### Failure to State a Claim

Long asserts that the superior court also erroneously dismissed the suit for a failure to state a claim under CR 12(b)(6). Because the Tribe did not waive the Commission's sovereignty, we decline to review this issue.

### Stay of Discovery

Long challenges the superior court's stay of discovery. A court has discretion to stay discovery pending a determination about immunity from suit.[52] The issue of immunity here can be determined on the basis of the law. So the superior court did not abuse its discretion by staying discovery.

Long also asserts he should be given the chance to amend his complaint to address the sovereign immunity claim in lieu of it being dismissed. He did not ask the trial court to let him amend. We decline to consider this request.

---

[51] Snoqualmie Tribe Gaming Comm'n Hr'g Regs. § 2.10(E).

[52] Behrens v. Pelletier, 516 U.S. 299, 308, 116 S. Ct. 834, 133 L. Ed 2d 773 (1996) (indicating that qualified immunity protects one from the burdens of litigation, including pretrial actions, and therefore a court should stay discovery during determination regarding immunity).

Denial of Motion for Reconsideration

Long asserts that the superior court abused its discretion by not granting his motion for reconsideration. Long does not provide any argument in his brief to establish the grounds for reconsideration under CR 59. We need not address an issue that a party does not argue in its brief.[53] We decline to review this issue.

CONCLUSION

Long fails to demonstrate that the Commission waived its sovereign immunity. He thus fails to show that the superior court had subject matter jurisdiction over his claim. The superior court did not err when it dismissed the case. We affirm.

_Leach, J._

WE CONCUR:

_Andrus, J._                          _Verellen, J._

---

[53] Timson v. Pierce County Fire Dist. No. 15, 136 Wn .App. 376, 385, 149 P.3d 427 (2006) (citing State v. Thomas, 150 Wn.2d 821, 868-69, 83 P.3d 970 (2004)).