**FILED**
**JANUARY 23, 2024**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re Parentage of: | ) | No.  39222-8-III |
| | ) | |
| I.D.O.† | ) | |
| | ) | |
| Minor child, | ) | |
| | ) | |
| SHAWN M. JETT, | ) | |
| | ) | |
| Appellant, | ) | UNPUBLISHED OPINION |
| | ) | |
| v. | ) | |
| | ) | |
| JASMINE R. CAREY, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, A.C.J. — Shawn Jett appeals four contempt orders, premised on his violations of a parenting plan.  He challenges the sufficiency of the evidence and the trial court's failure to include a purge provision in each order.  We affirm and award Jasmine Carey her reasonable attorney fees and costs on appeal.

---

† To protect the privacy interests of the minor child and because the minor child prefers to use the name "J[ ], we shall use that initial throughout this opinion.  Gen. Order for Court of Appeals, *In re Changes to Case Title* (Wash. Ct. App. Aug. 22, 2018) (effective September 1, 2018), http://www.courts.wa.gov/appellate_trial_courts.

No. 39222-8-III
*In re Parentage of I.D.H.O.*

## FACTS[1]

*First contempt order*

Shawn Jett (Father) and Jasmine Carey (Mother) are the parents of J., a young teenager. The parties' parenting plan orders joint decision-making for all nonemergency healthcare decisions. In June 2020, the parties mediated issues related to the parenting plan. While they discussed counseling for J., Father's only stated basis for counseling was he thought J. had ADHD.[2] Mother and Father agreed to counseling with a specified provider and Mother made J. an appointment. Father cancelled that appointment. The parties did not discuss counseling again. Unbeknownst to Mother, Father unilaterally changed J.'s primary care provider in December 2020.

In February 2021, the parties again mediated parenting issues. Father did not tell Mother he thought J. needed counseling, nor did he disclose that he had changed J.'s primary care provider or that the new provider recommended counseling.

In March 2021, J. started seeing a mental health counselor. Father did not share this information with Mother.

---

[1] The parties agree that the challenged findings of fact must be sustained if they are supported by substantial evidence. Given that the trial court found Mother's evidence credible, we take the statement of facts from her declarations.

[2] Attention deficit hyperactivity disorder.

On August 8, 2022, Mother brought her first motion against Father for contempt. The trial court found Father in contempt, ruling that he violated the parenting plan by "failing to notify/inform/involve the mother in the child's mental health counseling and medical decision making." Clerk's Papers (CP) at 58. It additionally found that Father was capable of following the parenting plan and that his failure to do so was intentional, where Father "secreted the knowledge that the child was in counseling . . . from the mother." CP at 58. This concealment was intentional notwithstanding the parties' earlier discussions about the possibility of J. entering counseling. Being intentional, the court deemed the concealment in bad faith. The court found that Father was able but unwilling to follow the parenting plan, as he "continue[d] to fail to notify the mother of counseling appointments and [was] not involving her in the process." CP at 59. Pursuant to its contempt finding, the court ordered Father to pay a $100 civil penalty into the court's registry and awarded Mother $835 in attorney fees and costs.

*Second contempt order*

After abiding by the parenting plan's visitation schedule for several years, Father filed for a domestic violence protection order against Mother. Although the court denied Father's request, J. began refusing to attend visits with Mother.

Mother was scheduled to pick up J. on August 4, 2022, at 5:00 p.m. at an Ace Hardware parking lot. Mother arrived early, between 4:00 and 4:30 p.m. When J. told her that he needed to use the restroom inside the store, Mother agreed. When Mother began to follow J. into the store, Father's brother stopped her to serve her with court papers. It was then that Mother saw J. run to an adjacent parking lot where he got into a car with an 18-year-old female, Aurora. Father watched the two drive off and then left.

Mother had previously expressed concern about J. spending time with Aurora. Acting on that concern, Mother called the police, who told her to wait in the parking lot. She then texted Father, asking for J.'s and Aurora's cell phone numbers. Father did not respond. When Mother texted again to ask Father if he knew where J. had gone, he said he did not know. When Mother again asked for the cell phone numbers, Father again did not respond. Mother again texted Father, stating that if he did not know where Aurora had taken J., then this was a kidnapping and they should pursue charges. Father texted a screen shot of the message back to Mother, apparently thinking he was sending it to J. Father claimed he was out looking for J. but when Mother drove by his home, his van and truck were parked in the driveway.

At 8:46 that evening, Father texted Mother that J. had returned home and he would take J. to his counselor the next day. Father asked Mother if she would be willing to

4

come to the appointment, and Mother responded that she would take J. since it was her residential time, and she still wanted J. to be with her. She offered to meet with them both to assure J. he was not in trouble and to express both parents' mutual support. She asked that Aurora not be at the drop-off and asked for the counselor's telephone number. Father did not respond.

Mother texted Father the following morning to ask when and where she should pick up J. for his counseling appointment. Father never responded. Mother missed her entire long-weekend visit.

The parties did not communicate until Mother's next regular long-weekend visit, beginning August 11, 2022. Two-and-one-half hours before the scheduled exchange, Father texted Mother, claiming J. was sick, but negative for COVID. Mother told Father she would be at the Ace Hardware at 5:00 p.m.

When Father arrived with J., J. sat on a cart rack in the parking lot, insisting he did not have to visit Mother because he was sick. J. told Mother he was not going with her because "he was told that he did not need to [go]," and because Father "told him that there was nothing the police would do to make him [go]." CP at 29. J. "insisted his dad told him that he should not have to come over because he was sick." CP at 29.

Mother and Father then began discussing J.'s counseling and medications, but Father claimed he did not know the name of the counselor or what medications J. took. After Mother reassured J. that both parents loved and supported him, even suggesting a joint weekly dinner, J. again refused to comply with visitation and said because he was 14, "he [got] to make all of the decisions for himself and . . . [could] do whatever he want[ed]." CP at 30. Father did not refute J.'s statement.

After talking to Serenity, Mother's daughter, J. agreed to come over. Yet after briefly being alone with Father, J. changed his mind, again insisting he would not go with Mother. Father never encouraged J. to go with Mother and excused J.'s behavior as "stubborn." CP at 30.

J. then insisted Mother take him to lunch instead of their court-ordered visit. Father told Mother that he too would be available for lunch any day over her residential time. Father and J. insisted they would only do lunch, no visitation. Father and J. resisted the visitation for more than five hours before Father left with J.

Mother texted Father the next day, a Friday, stating she would meet Father and J. at noon to take them both to lunch, while making clear the lunch would not substitute for her weekend visit. Father agreed, but arrived 45 minutes late. J. then insisted he was not going with Mother. After 30 minutes, J. again left with Father, who never once

encouraged J. to go with Mother.  Father instead claimed he was "doing the right thing as a parent by telling [J.] not to [go] over."  CP at 30.

On August 23, 2022, Mother brought her second contempt motion against Father. The trial court declined to find Father in contempt for when J. left with Aurora, finding insufficient evidence of collusion between Father and J.  However, the court found Father in contempt for his behavior the following weekend, when he remained in the Ace Hardware parking lot for a six-hour "standoff," "not doing anything to disabuse [J.] of the notion that [he] gets to dictate visitation."  Rep. of Proc. (RP) at 34.  By failing to correct J.'s mistaken belief that J. had the right to refuse visitation, Father was "implicitly encouraging [J.] to defy visitation" and contributing to his "bad attitude."  RP at 34. Simply stated, Father failed to "explicitly tell the child, 'You must go.'"  RP at 34.

The court's contempt order found that Father was able to follow the parenting plan but was unwilling to do so, and found bad faith where Father knew J. was hesitant to attend visits, but made no effort to encourage J. to attend.  The court ordered Father to pay $250 into the court registry, and awarded Mother $835 in attorney fees and costs, along with compensatory visitation.

*Third contempt order*

On August 18, 2022, Mother arrived at Ace Hardware for another visitation exchange. J. got out of Father's van and told Mother he would not go with her. Father sat in his van, waiting, and did not encourage J. to leave with Mother. J. eventually left with Father.

On September 8, 2022, Mother brought her third contempt motion against Father. The court again found Father in contempt, ruling that he "made no effort to encourage [J.] to attend visitation . . . ." CP at 167. Again, the court found Father able but unwilling to follow the parenting plan. The court concluded that Father acted in bad faith where he knew J. was hesitant to attend visits but made no effort to encourage J. to attend. It ordered Father to pay $250 into the court registry and awarded Mother $835 in attorney fees and costs, along with compensatory visitation.

*Fourth contempt order*

On September 9, 2022, the parties arrived at Ace Hardware for another visitation exchange. J. got out of Father's truck and sat in the cart return area near Mother's car. The two talked for a while, and Mother asked J. a few times to leave with her. J. refused. During the entire time, Father sat in his truck without encouraging J. to leave. J. returned to Father's truck, where they laughed together and left.

On September 22, 2022, Mother filed her fourth contempt motion against Father. The court again found Father in contempt. Specifically, the court found that Father just "sat in his vehicle nearby," making no effort to encourage visitation. CP at 203. The court found that Father was able but unwilling to follow the parenting plan. It concluded that Father's actions were in bad faith, where he knew J. was hesitant, but rather than ensure the visit, he did the opposite. The court ordered Father to pay $250 into the court registry and awarded Mother $835 in attorney fees and costs, along with compensatory visitation.

ANALYSIS

Father raises three arguments on appeal: (1) he made reasonable efforts to comply with the parenting plan, and substantial evidence does not support the findings of bad faith, (2) Mother failed to show that J. desired his counseling information to be released to her, and (3) the contempt orders should have included a purge provision.

1. *Sufficient evidence supports the second, third, and fourth findings of contempt*[3]

This court reviews a trial court's contempt rulings for abuse of discretion. *In re Marriage of James*, 79 Wn. App. 436, 439-40, 903 P.2d 470 (1995). A trial court

---

[3] Father's sufficiency challenge to the first finding of contempt is discussed in the next section.

9

operates within its discretion when its findings derive from the factual record, its

conclusions apply sound law, and its decisions are not manifestly unreasonable. *In re*

*Marriage of Bowen*, 168 Wn. App. 581, 586-87, 279 P.3d 885 (2012).

Where a trial court reviews competing declarations in determining the underlying

facts, its findings of fact will be upheld if they are supported by substantial evidence. *In*

*re Marriage of Rideout*, 150 Wn.2d 337, 350-51, 77 P.3d 1174 (2003); *see also In re*

*Determination of Rights to Use of Surface Waters of Yakima River Drainage Basin*,

177 Wn.2d 299, 340, 296 P.3d 835 (2013) (applying substantial evidence standard after

trial court made factual findings from documentary evidence). Substantial evidence is

that quantum of evidence sufficient to persuade a fair-minded person of the truth of the

premises. *Surface Water Rights*, 177 Wn.2d at 340.

Both parties agree that *Marriage of Rideout* controls the disposition of the

first issue. There, the court held that a "parent may be held in contempt, pursuant to

RCW 26.09.160, for failure to make reasonable efforts to require a child to visit the other

parent as required by a parenting plan." 150 Wn.2d at 341.

Here, the second, third, and fourth contempt orders are supported by evidence

sufficient to persuade a fair-minded person that Father failed to make reasonable efforts

to require J. to visit Mother, as required by the parenting plan. Father contests Mother's

10

evidence by citing his own declarations. However, the trial court already weighed the

parties' competing declarations and found Mother's credible. Once the trial court weighs

evidence, our court will neither reweigh that evidence nor reassess its credibility.

In Mother's declarations, she stated that Father failed to facilitate visitations when

he did nothing at the Ace Hardware exchanges to encourage J. to leave with her.[4]

According to Mother, Father on one occasion even obstructed her visitation by expressly

supporting J.'s decision to dictate the terms of visitation himself. On another occasion,

Father laughed with J. before leaving the parking lot with him. We conclude that the trial

court's challenged findings are supported by substantial evidence.

2.      *Sufficient evidence supports the first finding of contempt, notwithstanding that J. may have initiated mental health treatment on his own*

A parent who refuses to comply with a parenting plan has acted in bad faith

and shall be held in contempt of court. RCW 26.09.160(1). A parent with a

reasonable excuse for not complying with a parenting plan or who is not able to

comply must demonstrate that excuse or inability by a preponderance of the evidence.

---

[4] Father argues that statements made by J. to Mother are inadmissible hearsay. Father does not identify which of J.'s statements he challenges on appeal nor does he meaningfully argue this point. We decline to review this issue due to a lack of reasoned argument. *Timson v. Pierce County Fire Dist. No. 15*, 136 Wn. App. 376, 385, 149 P.3d 427 (2006).

RCW 26.09.160(4).

Father argues he was excused from notifying Mother of J.'s mental health counseling because there is no evidence J. desired to have his counseling information released to her. In support of his argument, Father cites RCW 70.02.265(1)(a), which prevents providers from releasing, without patient consent, the medical information of adolescents who seek their own treatment. This statute does not support Father's argument. RCW 70.02.265(1)(a) binds only providers. It does not empower a parent to withhold medical information from another parent in violation of a parenting plan.

Here, Father withheld from Mother the fact that J. was receiving counseling, including the name of the counselor. This violated the parenting plan, and the trial court did not abuse its discretion by finding Father in contempt.

### 3. *Purge provisions were not required*

Father argues the trial court's failure to include purge provisions in its coercive contempt orders invalidated those orders. Because purge provisions do not apply to compensatory contempt sanctions, such as those here, we affirm.

The determination of whether contempt orders under RCW 26.09.160 require purge provisions is a question of statutory interpretation we review de novo. *In re Parentage of J.D.W.*, 14 Wn. App. 2d 388, 396, 471 P.3d 228 (2020).

12

Chapter 7.21 RCW distinguishes between punitive contempt, which upholds a court's authority, and remedial contempt, which coerces compliance from the contemnor. RCW 7.21.010(2), (3). When a court imposes remedial contempt, the contemnor "can avoid the sanction by doing something to 'purge' the contempt." *In re Interest of Mowery*, 141 Wn. App. 263, 275, 169 P.3d 835 (2007). However, a court imposing remedial contempt may separately order the contemnor to compensate another party for losses suffered as a result of the contemptuous behavior. RCW 7.21.030(3); *see also Gronquist v. Dep't of Corr.*, 196 Wn.2d 564, 571-72, 475 P.3d 497 (2020) (A court may impose compensatory sanctions irrespective of whether it imposes remedial sanctions.).

Because the attorney fees and costs provided for in RCW 26.09.160(7) inure to the aggrieved parent, they are compensatory sanctions. *In re Marriage of Lesinski*, 21 Wn. App. 2d 501, 514-15, 506 P.3d 1277 (2022). A trial court imposing compensatory sanctions under RCW 26.09.160 need not preserve the contemnor's opportunity to purge those sanctions. *Id.* Accordingly, the trial court did not err by omitting purge provisions from the contempt orders it imposed on Father.

### 4. *Attorney fees and costs*

In her responsive brief, Mother devotes a section to supporting her argument for reasonable attorney fees and costs on appeal. She cites RCW 26.09.160 and decisional

13

No. 39222-8-III
*In re Parentage of I.D.H.O.*

authority in support of her argument.

RCW 26.09.160(1) provides in relevant part:

An attempt by a parent . . . to refuse to perform the duties provided in the parenting plan . . . shall be deemed bad faith and shall be punished by the court by holding the party in contempt of court and by awarding to the aggrieved party reasonable attorneys' fees and costs incidental in bringing a motion for contempt of court.

In *Rideout*, the Supreme Court concluded that this subsection, and a similar subsection, RCW 26.09.160(2)(b)(ii), requires a contemnor to pay reasonable attorney fees and costs even on appeal, notwithstanding the failure of the statute to say so expressly. 150 Wn.2d at 358-59. We conclude that Mother is entitled to recover her reasonable attorney fees and costs on appeal.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, A.C.J.

WE CONCUR:

Staab, J.

Cooney, J.

14